# WHEELING.

HOFFMAN *et al. v.* RYAN *et al.*

Submitted June 12, 1882—Decided April 7, 1883.

(*WOODS, JUDGE, Absent.)

1. If the whole transaction between the grantor and the grantee in a deed absolute on its face shows, that after the execution of such deed, a debt still remained due from the grantor to the grantee, such transaction will be regarded as a mortgage, it matters not in what form the papers are drawn.   (p. 429.)

2. Though the deed be absolute on its face, and a contract is made at the same time in writing between the grantor and the grantee, whereby the grantee is authorized to sell the land or a part of it in a specified time, and to pay back the consideration for the deed, yet in the absence of parol proof to the contrary such deed will be regarded as a mortgage.  (p. 429.)

3. The fact, that possession remains with the grantor, will have great weight in favor of holding the transaction to be a mortgage, when the question is, whether it be a conditional sale or a mortgage.  (p. 430.)

4. If the owner of a tract of land executes a deed of trust, conveying his land to a trustee to secure certain debts, and afterwards a judgment is rendered against him, which is duly docketed, and

---

*Cause submitted before Judge W. took his seat on the bench.

he then makes a contract with a third party to advance for him the amount secured by the deed of trust, and to secure such advance mortgages this land to the person advancing the money for him, and such mortgagee pays off the debts secured by the deed of trust, it would be a complete satisfaction of these debts both in law and equity ; the deed of trust becomes wholly inoperative, and the mortgagee can not be subrogated to the rights of the *cestui que trust* and have the deed of trust kept alive for his benefit, thus securing priority over the judgment-debtor. (p. 434.)

5. A decree between co-defendants, can only be based upon the pleadings and proofs between the complainants and defendants ; and no decree can be made between co-defendants, founded upon matters not stated in the bill, nor in litigation between the complainants and defendants, or some of them.   (p. 437.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Monongalia, rendered on the 14th day of July, 1879, in a suit in chancery in said court then pending, wherein John N. Hoffman and John W. Carrace were plaintiffs and Benjamin Ryan, John W. Corrothers and others were defendants, allowed upon the petition of said Carrace and Ryan.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the case:

John H. Hoffman and John W. Carrace, in April 1876, instituted a suit in the circuit court of Monongalia county against Benjamin Ryan and John W. Corrothers, to whom Benjamin Ryan and wife had conveyed his real estate, all of which lay in said county, to subject said land to the payment of two several judgments, in favor of the plaintiffs severally, which had been docketed prior to said conveyance of said land to John W. Corrothers.  The bill made as parties defendant the plaintiffs in four other judgments, which had been obtained against said Ryan, and duly docketed, before said conveyance to John W. Corrothers, as well as two others, who were the securities of said Ryan in the debt evidenced by one of said judgments, and who had paid off the same. It also made defendant Jesse F. Fitch, to whom as trustee said Ryan and wife had conveyed by deed, duly recorded,

said land, prior to the rendition of any of said judgments to pay four notes of one thousand dollars each, payable respectively in one, two, three and four years from April 3, 1874, with interest from that date, and the proceeds of which notes were to be distributed among his creditors. Said deed of trust and notes to Fitch were executed by said Ryan, who had been declared a bankrupt by the district court of the United States, at the suit of John W. Corrothers and others.

The real questions in controversy in this cause were, whether the conveyance made by Ryan and wife to Corrothers, named in the bill, was an absolute sale and conveyance, as on its face it professed to be, a conditional sale with a right to re-purchase within three years, or a mortgage to repay moneys advanced for the use of Ryan by Corrothers, and also an old debt of five hundred and thirty-seven dollars and fifty cents due to Corrothers from Ryan, prior to his discharge as a bankrupt; and whether Corrothers having paid off the creditors of Ryan, who had been secured by the deed of trust to Fitch, trustee, was under the circumstances of the case entitled to be subrogated to their former rights and to be thus entitled to the benefit of the deed of trust executed to Fitch, trustee. If he was, as the court below decided, entitled to be thus subrogated, his debt would have priority over all the judgments named in the bill, including the plaintiffs' two judgments. If he was not, and the deed to him is to be regarded as a mortgage, then all the judgments named in the bill would have priority over his debt, which in this view of the case became only a lien from the time the deed or mortgage to him was executed.

The facts disclosed by the record bearing on these controverted questions are as follows: John W. Corrothers, who had a debt against Benjamin Ryan, with other creditors instituted proceedings against him in the district court of the United States to have him declared a bankrupt, and to distribute the proceeds of his property among them. His debts amounted to some thirty thousand dollars and his assets to about four thousand dollars; and after the payment of all costs it gave on the final distribution about fifteen per cent. of his debt to each creditor. Pending the suit, Ryan proposed to all his creditors a compromise, whereby all his prop-

erty real and personal was to be sold and conveyed to him, on his agreeing to pay therefor four thousand dollars with interest from April 3, 1874. One thousand dollars with this interest thereon, being payable each year from that date for four successive years. All of his creditors agreed to this proposal except Corrothers, who according to his testimony in this cause refused to agree to it, unless Ryan would give him bond with good security for two hundred dollars as a consideration for his agreeing to this compromise. According to Ryan's testimony Corrothers agreed, that if this two hundred dollar bond with security was given, he would take it in satisfaction of the debt and sign his name to the proposed compromise.

The bond was given, and the compromise proposed was signed by all the creditors, including Corrothers, and approved by the court, and a deed executed by the assignee in bankruptcy, conveying to Benj. Ryan all his real property, being three parcels of land in said county containing together about two hundred and seventy acres, and a deed of trust was executed by said Ryan and wife to the assignee, Jesse J. Fitch, as trustee, conveying all of said land in trust to secure the purchase-money, the said four notes of one thousand dollars each, with interest from April 3, 1874, payable in one, two, three and four years respectively. This deed of trust was dated September 13, 1875, and was duly recorded September 27, 1875.

After this compromise had been made, Ryan proposed to his creditors to pay them on April 1, 1876, ten per cent. on their debts in full of their demands under this deed of trust, and he drew up a paper to that effect, dated March 3, 1876, which was signed by eighteen of his creditors, whereby they agreed to this proposition, and further agreed to give to the *bearer* of that paper a proper voucher to the trustee, Fitch, when they were paid by the bearer of this paper this ten per cent. on their respective claims. Some four others of his creditors subsequently agreed to this arrangement. The whole amount of the claim of these twenty-two creditors, was eight thousand four hundred and forty-six dollars and ninety-five cents. There were however five of his creditors, who would not make this arrangement; their claims amounted to

five thousand eight hundred and twenty-four dollars and thirty-eight cents, and they afterwards took for their claims as hereinafter stated six hundred and eighty-one dollars and twenty-five cents or about eleven and three fourths per cent. The money, with which Ryan expected to purchase up these claims at ten per cent., and thus make about fifty per cent. out of his creditors on the amount advanced, as the trustee, Fitch, would pay about fifteen per cent. on these claims, he expected to raise from Dille & Johnson.   They were to get a conveyance of the land from Ryan and wife; Ryan drew the deed to them and signed it himself, but his wife never signed it, and it never was delivered; thus the arrangement was broken up.

After Ryan had been discharged as a bankrupt, he incurred various debts, for which judgments were had against him, which were all regularly docketed.   There were seven of these judgments; the first of which was rendered on April 13, 1875, and the last on March 11, 1876, and with interest up to September 18, 1878, they amounted in the aggregate to seven hundred and five dollars and fifty-three cents.   They are the judgments named in the bill in this cause.   Nothing was ever paid on them by Ryan.   Dille & Johnson were aware of the existence of these judgments and expected, if their arrangements with Ryan had been completed, to have paid them off.

Ryan states, that his arrangement with Dille & Johnson was, that they would pay off the trust-debt to Fitch, the trustee, all these judgment-liens on this land, and give to him Ryan, four hundred dollars on Ryan's giving to them the contract, which he had made with certain of his creditors to take ten per cent. on their claims; and Ryan and wife were to execute to Dille & Johnson a deed for the land.   But Corrothers had in his possession this agreement with the creditors to take ten per cent. on their claims, and he refused to give it up.   Ryan says, that Corrothers told him the farm was worth more than Dille & Johnson were proposing to pay for it, and said he would loan him Ryan, the money to pay Fitch the amount due on April 3, 1876, or that he would pay the money to Fitch for Ryan on his making him safe.   Ryan further states that he told him he would like to have about

three years to sell the place, if he and Corrothers made an agreement. He asked how Ryan could secure him and suggested, that Fitch should transfer to him the notes Ryan had given for the purchase-money, when Corrothers paid them off. He Ryan, told him, that Fitch could not assign these notes to him, and that Fitch said, that he Ryan, would have to pay off the notes, or some one for him, and when so paid no one could hold this lien. He Corrothers, then said, that Ryan would have to make to him a deed for the land, to secure the money he was to advance, and that he would give him three years to sell it for the amount, which was against the land and would also give Ryan an instrument in writing, of the same date as the deed to show, that Ryan was to have three years in which to sell the land, and that he was to have all he could make within the three years, over and above the purchase-money. He says, that Corrothers was to pay these judgments and was to have his old debt against Ryan, then amounting to five hundred and thirty-seven dollars and fifty cents, and the balance was to be his Ryan's; and Ryan says he was also to furnish him three hundred dollars, of which one hundred dollars was to pay taxes, and two hundred dollars was to give him Ryan, a start.

The deed, which in carrying out this arrangement was made by Ryan and wife to Corrothers, was copied from the deed, which Ryan had drawn to be delivered to Dille & Johnson, a few days before. This deed to Corrothers was dated March 20, 1876; the consideration named in it, was the unpaid balance on the purchase-money notes, which Ryan had executed to Fitch, trustee. All the lands conveyed were said to contain two hundred and eighty-five acres, excepting six and one fourth acres, which had been sold to Z. M. Gidley; and Ryan bound himself to deliver possession of this land on April 1, 1876. Ryan says, that while a son of Abe Hull was copying this deed to Dille & Johnson, he Ryan told Corrothers he thought the deed ought to show all the money he was to pay. It ought to show that he was to pay these judgment notes against Ryan, and the balance of the money, this three hundred dollars, which he was to let him have; that if it did not, Ryan said some lawyer told him, it would be a fraud on its face. Corrothers said, he would not

have it changed; and Corrothers then drew up a paper, after reading which to him Ryan, he said, that he Ryan, was not paying any rent; that he was to pay him Corrothers, eight per cent. per annum on the money. Corrothers then said, that it amounted to the same thing, only he called it rent in place of interest. Ryan says he told him he did not think it right that the taxes should be put in the agreement—and he says he wanted him to put the three hundred dollars which was to be paid to him Ryan, in the agreement. He said it would not do to put it there, if he did they would make him pay it over; but he would give him two hundred dollars, and would lift the tax receipts against the land, and hand them to him, Ryan. This written agreement was as follows:

"Whereas, the said Ryan has this day sold to the said Corrothers two hundred and seventy-nine acres of land for the sum of three thousand and thirty-nine dollars, and the said Corrothers doth agree, for the said Ryan, to sell the said land, and to have all he can make over and above the purchase-money, within three years from this date, and to reserve the homestead, or any part thereof, when enough of the rest is sold to satisfy the said claim. The said Ryan does agree to rent the land for two hundred and forty-two dollars from the said Corrothers, cash, to be paid on the 1st of April, 1877, and all taxes, and for two years after for the same amount and conditions.

"And it is further agreed that if the said rent is not paid or to even become due, then this article is null and void and of no effect.

"And it is further agreed that the said Ryan has turned over a certain article or contract between some of his creditors and the bearer, for which the bearer has agreed to pay ten per cent. for said claims; and the said Corrothers doth agree to give to the said Ryan all above the ten per cent. after the said Corrothers has received his ten per cent. and five hundred and thirty-seven dollars and fifty cents, after deducting the per cent. out of said five hundred and thirty-seven dollars and fifty cents, and if the last does not pay the five hundred and thirty-seven dollars and fifty cents, it is to come out of the price of the land; and the said Corrothers

does agree to buy all of the claims he can get at ten per
cent.

"JOHN W. CORROTHERS.

"BENJAMIN RYAN."

The father of the young man, who copied the deed to Cor-
rothers, also testifies, but his testimony is very vague. He
was present when the papers were executed. He says, that
Ryan wanted something inserted in the agreement or in the
deed, that was not in them, and Corrothers said, that if the
amount received by Ryan was inserted it may have been
one, two, three, four or five hundred dollars, which he did
not remember, he Corrothers would have to pay it over
again; and that it was not inserted, but Corrothers agreed to
pay him. His recollection on the subject, was in other re-
spects, so vague, as to throw no real light on the transac-
tion. Corrothers, in his deposition, gives no details of the
circumstances attending the execution of this agreement of
March 20, 1876, and of the deed of that date; he simply
says, that this paper contains the *whole* of the contract be-
tween him and Ryan.

In carrying out his contract Corrothers paid to the eigh-
teen creditors, who had agreed with Ryan to take ten per
cent. on their claims, as also to four others, who subsequently
agreed to do so, eight hundred and fifty-five dollars, and
when he settled afterwards with Fitch and made him pay-
ments on the notes, which Ryan had given him for the pur-
chase of this land, he received from Fitch, on account of
these claims, about fifty per cent. more than he had paid, or
about one thousand two hundred and eighty-two dollars. He
also bought up five other claims against Ryan, and secured
by this deed of trust for six hundred and eighty-one dollars
and twenty-five cents, and he got from Fitch, the trustee, as
the dividend further about eight hundred and seventy-three
dollars and sixty-five cents, or about one hundred and ninety-
two dollars and forty cents in excess of what he had paid on
these five claims. The excess on the others being some four
hundred and twenty-five dollars, making on all the claims
purchased of the creditors of Ryan, a profit of about six hun-
dred and twenty dollars.

Corrothers paid to Fitch the full amount, which remained

due from Ryan to him under the deed of trust of September 13, 1875. The first of his payments was made April 1, 1876, and was eight hundred and eighty-two dollars and sixty-four cents; the second payment was April 2, 1877, and was one thousand one hundred and eighty dollars; and the third and last payment was of one thousand two hundred and forty dollars, and this was in full of the entire balance due by Ryan to Fitch, trustee, secured by this deed of trust. The receipts given by Fitch, trustee, for these several sums were drawn as "received of Benjamin Ryan by the hands of John W. Corrothers," and they were stated to have been received as payments on the face of these receipts.

The notes of Ryan to Fitch were not transferred, assigned or delivered by Fitch to Corrothers, he stating in his deposition, that he did not think he had any authority to transfer or assign these notes of Ryan's. He told Corrothers so, and, that he Fitch doubted whether he Corrothers could have the benefit of any lien by paying the money, and he had better see to it before he paid the money. When the last note was paid nothing was said on the subject; when the other payments were made he told Corrothers, that he was not authorized to receive money from anybody but Ryan, and he would only receipt to him as coming from Ryan, but would show on the receipt, that the money came through Corrothers' hands; and in this way they were all drawn.

When Carrothers made the first payment for Ryan, he Fitch, did not know of any purchase which Corrothers had made of Ryan, he heard of it afterwards, and was shown their agreement by Corrothers. Corrothers said, when he took the receipts as he did, that he was willing to risk the payments as they were made. Another witness, Mackey, says, that a short time previous to the agreement between Corrothers and Ryan, he spoke to Corrothers about these judgments, which had been obtained against Ryan, and asked him if he did not think he would have them to pay if he bought the farm, and he answered by saying, that he expected he would.

This is all the evidence bearing on the question, as to the legal character of this transaction of March 20, 1876, between Corrothers and Ryan. In carrying out this agreement, Ryan

made a verbal contract with one Wm. Lyons, to sell him this land for four thousand one hundred dollars, payable in part on time. But it was never consummated, because of difficulties about the terms interposed by Corrothers. This was within a few months after the agreement of March 20, 1876, was made. Lyons was able to pay for this farm the price he agreed to pay. About the same time, Ryan was negotiating a sale of this land to one Brown, for four thousand dollars, of which one thousand dollars was to be paid in cash. It was broken off because Corrothers would not make the deed to Brown, but he said, that if he was paid his money, he would destroy the deed which Ryan had made him, and let him make the deed to Brown. About nine months after this contract between Ryan and Corrothers, Ryan sold to one McClure twelve acres, a part of the tract including the best part and the dwelling-house for two thousand eight hundred dollars, and an agreement for the sale was actually signed by these parties, McClure and Ryan, dated December 20, 1876; but this sale was also broken off by Corrothers refusing to sign the deed, and it was by the mutual agreement of McClure and Ryan canceled about a month afterwards.

I deem it unnecessary to state the details of these attempts of Ryan to sell this land, or the manner in which they were broken off. Dent, commissioner, under an order of the court in this cause, made a report of the liens on the land, in which he placed Corrothers' lien as the first lien and the judgments against Ryan in the order, in which they were obtained, as subsequent liens. A consent decree was rendered on the 30th of March, 1877, in accordance with this view, whereby a sale was ordered of this land to pay these liens; and a sale of it was made, but the court afterwards, on affidavits showing that this decree had never been consented to by some of the parties, set aside this consent decree, and being afterwards satisfied by the decision of this Court in *Marion* v. *Fahey*, 11 W. Va. 482, that it had in this suit no authority to set aside this decree of March 3, 1877, except by consent it, by consent annulled this order, and then by consent, set aside the decree of March 3, 1877, as well as the sale made under it. A motion was made to appoint a receiver, to take possession of this land, on the ground, that

Ryan, in whose possession it then was, was committing waste. Twelve affidavits were taken in support of and in opposition to this motion. The court overruled it, but by consent of Ryan, enjoined him from committing waste.

On March 27, 1878, the court ordered, that this cause be recommitted to a commissioner, to ascertain and report the several liens on the land in the bill and answers, describe their character, priorities and amounts, and to whom due. And it provided, that a publication should be equivalent to the service of notice on all parties to the suit, and on all parties interested. The answers of Ryan, Corrothers and certain of the judgment-creditors had been filed, in which Ryan and the judgment-creditors insisted, that if Corrothers had any lien on the land, which they denied, it was subsequent to the liens of the said judgment-creditors of Ryan.

On February 27, 1879, Commissioner Brown reported, that the aggregate of the liens against the said land, with interest calculated thereon to the 18th of September, 1878, is as follows: First, a judgment in favor of John W. Corrothers for three receipts given by Fitch to Corrothers, before referred to, three thousand five hundred and sixty-four dollars and ninety-two cents; second, Watts and Harner's judgment for eight thousand six hundred and forty-eight dollars; third, a judgment of John W. Carrace, plaintiff, for ninety-three dollars and fifty-eight cents; fourth, a judgment of *Morgantown Bank* v. *Benj. Ryan, George W. Johnson and Horatio N. Mackey*, for three hundred and twenty-two dollars and seventy-three cents; fifth, a judgment of John H. Hoffman, plaintiff, for seventy-three dollars and forty-nine cents; sixth, a judgment of Rawley Waters for twenty-one dollars and sixty-five cents; seventh, a judgment of James V. Bougher for one hundred and seven dollars and sixty cents; total four thousand two hundred and seventy dollars and forty-five cents. The sixth and seventh, being judgments pronounced at the same court, were to be paid ratably.

The evidence showed, that the judgment in favor of the Morgantown Bank had been paid, but not by Ryan the principal in the debt, but by his sureties Johnson and Mackey, who were entitled to the benefit of it. Exceptions were filed to this report by Johnson and Carrace, and also by Ryan.

There was no basis for exceptions, except to the crediting of the lien of John W. Corrothers as being first in priority, and as being subrogated to the lien of the Fitch deed of trust of September 13, 1875, and to allowing as his claim the three amounts paid by him to Fitch, trustee, as hereinbefore stated. But these exceptors not content with this claimed, that Corrothers had no lien, being at best but a simple contract-creditor of Ryan; that he was guilty of fraud as shown by the evidence and, that he should be thrown out of court altogether, or at least be postponed to *bona fide* creditors, and, that he should be remitted to his remedies against Lyons, McClure, &c. If he failed to avail himself of the contracts with them it was his own fault, and that neither Ryan nor his honest creditors should suffer by Corrothers' default.

Ryan also excepted, because the commissioner failed to credit defendant, Ryan, with sundry payments made to Corrothers and proven, referring it is presumed to payments made by Job Hartman, on account of a small part of this land, which Ryan had conveyed to him. He objects to the crediting of the Morgantown Bank judgment, because it had been paid by his sureties, and also to a statement made by the commissioner, at Corrothers' instance, but which was not adopted by the commissioner.

The court on March 25, 1879, by its decree by the consent of Corrothers, corrected this report reducing the amount due to Corrothers by one hundred dollars paid, and secured to be paid by Job Hartley, with interest thereon from April 1, 1875, until the 18th day of September, 1878, aggregating one hundred and twenty dollars and fifty cents, leaving the amount due Corrothers, as of the 18th day of September, 1878, three thousand four hundred and forty-four dollars and forty-two cents.

It then overruled all the exceptions, and confirmed this report as thus corrected; and if the sum due each of the parties named in said report, were not paid within thirty days from the rising of the court, special commissioners appointed thereby were directed, after a specified advertisement, to sell said land for one hundred dollars in cash and the balance in equal installments, payable in one and two years with interest from the day of sale; requiring notes to

be given for these deferred payments with good security. The commissioners were required to give bond with good security, as required by law in the penalty of six hundred dollars.

These commissioners pursuant to this decree sold this land, and John W. Corrothers became the purchaser at the price of two thousand three hundred dollars, and complied with the terms of sale; and the commissioners made report or this sale to the court. Benjamin Ryan excepted to this report, for reasons not necessary to be stated, as they seem to be frivolous, except, that "of the gross inadequacy of price for which the land was sold," and because the attorney or Job Hartley proclaimed at the sale, that certain parts of the land advertised for sale was owned by him, and that he would contest the sale. No affidavits were taken to support this exception, but on the contrary Hoffman, one of the plaintiffs, made affidavit, that he had gone on the land with a view of bidding on it; that he found it in very bad condition and the fences out of repair, and in his judgment it was not worth more than two thousand dollars. But J. W. Johns offered an upset bid of five hundred dollars, and gave bond with security to make his bid good.

The cause was heard on July 14, 1879, and the said John Corrothers having agreed to credit his debt, ascertained by the court to be three thousand four hundred and forty-four dollars and forty-two cents with interest from September 18, 1878, with the whole of the purchase-money less the costs of the sale sixty-three dollars and fifty cents, and also with this five hundred dollars the proposed upset bid, the court directing these credits to be made on Corrothers' debt, which was the first lien; overruled the exception to this sale, and confirmed it, and ordered a deed to be made to Corrothers of this land, excepting therefrom with his consent, so much of said land as was conveyed by Ryan and wife, by deed dated December 7, 1876, to John Hartley. After deducting the said expenses of sale, said commissioners were directed to pay the residue of the one hundred dollars, which they had received, to Corrothers, and were allowed three dollars for making said deed, to be paid by Corrothers.

From this decree, John W. Carrace and Benj. Ryan ob-

tained an appeal and *supersedeas*. In their petition while they only expressly ask for an appeal from this decree, yet most of the assignments of errors, were for errors committed or supposed to have been committed by this Court in its decree of March 28, 1879, which decree really settled all the principles of the cause adversely to the petitioners for this appeal. The cause has been argued by the counsel for the appellants, as well as the counsel for the only substantial appellee, John W. Corrothers, just as if the decree of March 28, 1879, as well as that of July 14, 1879, was appealed from, though the attention of the court is called to the fact, that the summons based on the order granting the appeal, recites only the decree of July 14, 1879, as the one appeal from.

*Thomas D. Houston*, for appellants, cited the following authorities: 64 N. Y. 397; 7 N. H. 99; 1 Jones Mortg. § 976; Herm. Mortg. § 185; 27 Gratt. 740; Va. L. J (April, 1881) 254; 42 N. Y. 96; 36 N. H. 505; 3 Barb. 537; Hill Mortg. 372; 3 Paige 645.

*P. H. Keck*, for appellee, Corrothers.

GREEN, JUDGE, announced the opinion of the Court:

Many questions were raised in this case, in the court below, and have been argued in this Court, which in my judgment are not questions which can be considered or determined in this cause, though much evidence was taken in reference to them. It is these questions not properly in this case, which have so swelled this record. It contains three hundred and sixty-five manuscript pages, most of which have no bearing on the real questions proper to be decided in this case. In stating the case, I have merely stated enough of this foreign matter to show the questions on which it was thus attempted to have the Court act in this case; but I have not stated the facts in full in reference to them.

The first question really to be determined in this cause is, what is the true character of the transactions, which culminated on March 20, 1876, in Benjamin Ryan and wife executing a deed with general warranty of title, to John W. Corrothers, for the tract of land belonging to said Ryan in Monongalia county, containing two hundred and eighty-five

acres more or less, excepting six and one fourth acres sold to L. M. Gidley; and at the same time signing, together with John W. Corrothers, the agreement bearing date the same day, and which was a part and parcel of the same transaction? Was this a conditional sale of this tract of land, as contended for by Corrothers, or was it a mortgage as contended for by Ryan, or was it an absolute sale of the land with certain rights and privileges conferred on Ryan, with reference to this land, by this written agreement?

The law on this subject is thus stated in *Davis, Committee,* v. *Demming et al.,* 12 W. Va. p. 281, 282 : "A conditional sale with a right to repurchase, very nearly resembles a mortgage. The distinction is, that if the money advanced is not loaned, but the grantor has a right to refund it in a given time and have a reconveyance, if the debt remains, the transaction is a mortgage, otherwise not. See *Robinson* v. *Cropsey et al.,* 2 Ed. Chy. 137; *Slee* v. *Manhattan Co.,* 1 Paige's Ch. 56; *Hicks* v. *Morris,* 5 Gill. & J. 75. In a case of doubt however, the court of equity will always lean in favor of a mortgage rather than a conditional sale. *Conway's Ex'r* v. *Alexander,* 7 Cranch 237; see also *Dougherty* v. *McColgar,* 275. Parol evidence, the declaration and conduct of parties at the time of the transaction or subsequently, as well as all the circumstances attending or surrounding the same are received to show, whether the transaction was a conditional sale or a mortgage; and this is done though the deed or bill of sale be absolute on its face. *Robertson* v. *Campbell,* 2 Call 354; *King* v. *Newman,* 2 Munf. 40; *Lamb* v. *Shears,* 1 Wend. 437; *Horner* v. *Kiteltas,* 46 N. Y. 605." (See also *Morris* v. *Executor of Nixon et al.,* 1 How. 118; *Russell* v. *Southard et al.,* 12 How. 139; *Pierce* v. *Robinson,* 13 Cal. 116; *Key* v. *McCleary,* 25 Ia. 191; *Crane* v. *Buckhannon et al.,* 29 Ind. 570; *Stupp* v. *Phelps,* 7 Dana 297; *Emerson* v. *Atwater,* 7 Mich. 12; *Johnson* v. *Huston,* 17 Mo. 58; *Sweet* v. *Parker,* 22 N. J. Eq. 453 ; *Van Buren* v. *Olmstead,* 5 Paige 9; *Hills et ux.* v. *Loomis,* 42 Vt. 565; *Mann* v. *Falcon,* 25 Texas 271.) And again on page 282 : "The fact that by the papers executed no right of redemption exists, will be considered a matter of no importance, if it be shown by proof or surrounding circumstances, that a security or pledge for debt was intended; for a party is never

allowed to take from his debtor by any form of contract his right to redeem. See *Chapman* v. *Turner*, 1 Call 280; *Thompson* v. *Davenport*, 1 Wash. 128; *Pennington* v. *Handy et al.*, 4 Munf. 140; *Scott* v. *Britton*, 2 Yerg. 215; *Bennett* v. *Holt*, 2 Yerg. 6; *King* v. *Newman*, 2 Munf. 40; *Holdridge* v. *Gillespie*, 2 John. Chy. 30; *Clarke* v. *Cowan*, 2 Cow. 325; *Horn* v. *Kiteltas*, 46 N. Y. 605. If the vendor remains in possession of the land after the alleged sale, this is a circumstance that tends to show, that it was not really a sale but a mortgage, for such continuing possession in the vendor after a sale, if not inconsistent with a sale is an unusual accompaniment of it. *Ross* v. *Norvell*, 1 Wash. 40; *Thompson* v. *Davenport*, 1 Wash. 125; *Bennett* v. *Holt*, 2 Yerg. 6.

The law as thus stated seems to me to settle, that the transaction of Mach 20, 1876, between Benjamin Ryan and John W. Corrothers, constituted not a conditional sale, or a sale with certain rights of afterwards selling in a given time, and not afterwards conferred on Ryan, but a mortgage of the land by Ryan to Corrothers, to secure to Corrothers the repayment of all the moneys he should advance for Ryan under the agrement in writing made at the same time; and also to secure the interest on said advances and the old debt then amounting to five hundred and thirty-seven dollars and fifty cents, which Ryan owed to Corrothers, but from the compulsory payment of which, Ryan had been discharged as a bankrupt, together with the interest on said debt. As in other cases of mortgages Ryan, the grantor, was to remain in the possession of the said land.

It is true, that he was to pay what was called a rent on this land of two hundred and forty-two dollars a year; but then on the face of this agreement he had the right to pay off the advances made by Corrothers for him, by paying the principal of it only, so that this nominal rent of two hundred and forty-two dollars, was really but a substitute for the interest on the money to be advanced by Corrothers. Ryan says this interest agreed on was eight per cent. per annum, and the interest on the moneys advanced at that rate would be two hundred and forty-three dollars, or only one dollar more than this nominal rent; and this one dollar was probably allowed, because the rent was charged from a time some-

what in advance of the time at which the money was expected to be advanced, and was actually advanced. The taxes too, on this land, were by this agreement to be paid by Ryan, precisely what would have been done had he been a mortgager of the land. Then too, neither this nominal rent nor any part of it was ever paid by Ryan, though he held the land for years.

This would be perfectly natural if it was interest secured by a mortgage, but very unusual if he was really a tenant of Corrothers. The parol testimony in this case, all tends to prove, that the parties understood the conveyance made by Ryan and wife to Corrothers, as a mortgage and not as a sale. Ryan states the details of the transaction, and clearly if he is to be believed, the transaction was a mortgage and not a sale; it was a borrowing of money of Corrothers, and not a sale of his land to him. Corrothers on the other hand, does not pretend to state the details of this transaction, but relies solely on the face of the deed and on this agreement of the same date to show, that it was a conditional sale. But really this agreement on its face strongly indicates, that the transaction was a mortgage and not a sale, either absolute or conditional.

It is true, that this agreement begins by saying, that Ryan has this day sold to Corrothers this tract of land, but it immediately adds, that Ryan may sell this land to others and have all that he can make over the purchase-money, that is over the amount of money that Corrothers was to advance for his use, at any time within three years; and that Ryan was to reserve a homestead, which he had laid off and had recorded, or any part of this homestead when he had sold enough of the rest of the farm to satisfy Corrothers's claim. Now these provisions are utterly irreconcilable with either an absolute sale or a conditional sale of the land to Corrothers, but are perfectly consistent with a mortgage of the land; and indeed they seem to me to demonstrate, that the absolute deed was thereby declared by the parties to be a mortgage; it was simply a defeasance. A mortgage can as well be made by an absolute deed with a separate paper, as a defeasance, as by expresssing the defeasance on the face of the deed.

Where then it is said, that the land has this day been sold,

all that was meant was, that it had that day been conveyed by an absolute deed, referring to the deed made at the same time. But the next clause in this agreement is, "and it is further agreed, that if the said rent of two hundred and forty-two dollars is not paid as it becomes due, then this article is null and void of effect." As no rent was ever paid, it is insisted, that this rendered the deed absolute by making this defeasance void. But the rent was a mere substitute for interest at eight per cent. per annum on the moneys to be advanced, and this provision is simply, that if the interest on the money secured by the mortgage is not punctually paid, then the condition or defeasance in the mortgage is to become void and the deed absolute; and this is but the provision inserted in every mortgage, and is such a forfeiture as is never enforced, without giving to the mortgager his right to redeem after the forfeiture.

The other provisions of this agreement are, that Ryan had turned over to Corrothers his contract, which had been signed by eighteen of his creditors, whereby in view of the dividend, which they would get from Fitch, the trustee and assignee in bankruptcy, they would take ten per cent. on the amount of their claims. It was known, that the dividends of these eighteen creditors would amount to about fifteen per cent. on their claims, so that the creditors agreed in consideration of getting the money at once, to abate about one-third of their dividend. Corrothers was to pay them this ten per cent., and all that was realized from the dividend on these claims above this ten per cent., it was expressly stipulated, should belong to Ryan and not to Corrothers, and Corrothers agreed to buy up all the other claims for Ryan's benefit at the same rate.

In consideration of the large profit that Ryan would thus realize from the advance of this money by Corrothers, and from the labor of Corrothers in buying up, for his Ryan's benefit, the balance of these claims at less than their value, Ryan agreed to pay him the old debt he owed him of five hundred and thirty-seven dollars and fifty cents, after crediting it with the dividends Corrothers would get from Fitch, the trustee and assignee of Ryan. It is claimed, that this agreement by Ryan to pay this old debt made this transac-

tion usurious, and that this five hundred and thirty-seven dollars and fifty cents should, in the settlement between Corrothers and Ryan, be rejected as usurious interest.

But it does seem to me, that this is clearly an erroneous view. Ryan was under a moral obligation to pay this debt, which he honestly owed, though he had been discharged from its enforced payment by having been declared a bankrupt. Still he was under a moral obligation to pay the whole of it, and his promise in this agreement had there been no other consideration for such promise than this moral obligation, would have been legally binding on him, and the payment of this old debt could have been enforced against him. How then can the fact, that he received for this promise, which was at any rate binding on him without any valuable consideration, a consideration which enabled him to realize an amount exceeding the balance on this old debt, render this promise void?

The existence of this old debt, was a sufficient consideration for his promise; and his borrowing money at the same time at six per cent. did not certainly vitiate this promise. But for the money he was borrowing he was to pay two hundred and forty-two dollars a year, or about eight per cent. per annum. The excess of this interest over six per cent. was usurious, and cannot be enforced. No part of this rent of two hundred and forty-two dollars, or more properly interest, has been paid, and none of it can be enforced in excess of interest at the rate of six per cent. per annum on the money actually advanced by Corrothers for his, Ryan's, use. This rent should be treated precisely as if it had not been promised to be paid by Ryan, and in view of it, Ryan should be required to pay at the rate of six per cent. per annum on all moneys advanced by Corrothers for his benefit. In this mode this contract will be purged of all usury.

Of course, Ryan should be required to pay all the taxes on this land, and if Corrothers has paid any of them, in the settlement of their accounts the amount so paid by Corrothers in taxes, with the interest thereon, should be charged against Ryan as so much money advanced for his use, and secured by this mortgage. Corrothers can charge, as money advanced for Ryan's use secured by this mortgage, only such

sums as he paid to Ryan's creditors, and not the full amount paid to Fitch, trustee; as the contract expressly provided, that the purchase of these claims from Ryan's creditors was for the benefit of Ryan, and not for the benefit of Corrothers; and this was the case not only with the eighteen claims against Ryan, in regard to which Ryan had already made a contract, but with all the other creditors with whom Corrothers, for Ryan's benefit, should make contracts. And it applies as well to the five creditors, with whom Corrothers made contracts to pay more than ten per cent. on their claims, as to others. All these purchases of the claims of Ryan's creditors, made by Corrothers, must under this contract be regarded as made for Ryan's benefit, whether he bought them at ten per cent. or at a greater price. They were all included in this agreement with Corrothers and Ryan of March 20, 1876, no matter what per cent. Corrothers gave for them.

Of course any amount of money, which arose from the sale of land by Ryan himself prior to the 20th of March, 1876, to Job Hartley or to any one else, and which was not actually advanced by Corrothers out of his own funds, though it may have been handed over to the trustee, Fitch, by Corrothers and included in the receipts, which the trustee, Fitch, delivered to Corrothers, can not in the settlement with Ryan be charged by Corrothers as money actually advanced by him for the use of Ryan.

The next enquiry is: When Corrothers advanced under the contract of March 20, 1876, with Ryan the funds, out of which he paid off the trustee, Fitch, or the *cestui que trust* in this deed of trust, creditors of Ryan, to an extent, which they were willing to accept in lieu of their dividend under the deed of trust to Fitch, trustee, did he become entitled by subrogation, to the benefit of this deed of trust by Ryan and wife to Fitch, trustee, of date September 13, 1875? This question seems to me to involve no difficulty, but to be fully answered by the view we have taken of the transaction between Ryan and Corrothers of March 20, 1876, under which all payments made by Corrothers to Fitch, or to the creditors of Ryan, were made by Corrothers.

Whenever a debt is paid out of the funds of the debtor,

who is primarily bound for the debt, the debt is thereby satisfied both in law and in equity. This is the case even when there is a joint debtor, who is also a principal in the debt. And it is much more obviously so, when there is but one bound for the debt, and when it is paid with his funds. See *Kinley* v. *Hill*, 4 W. & S. 426; *Bartlet* v. *McRae*, 4 Ala. 689; *Jones* v. *Davids*, 4 Russ. 277; (3 Cond. Eng. Chy. Cas. 665.)

If the means are furnished by a third person, who is interested in keeping the debt alive, and there is no understanding that the old debt is to be kept alive, and it is paid off, though a mortgage, taken when the advance of the money was made to pay off the old debt, be pronounced void, yet, if it be paid off, it can not in a court of equity be kept alive by subrogation, so as to give priority to the person making such advance over a subsequent judgment. *Wiley* v. *Boyd*, 38 Ala. 635. But if instead of taking a second mortgage the person advancing the money on the promise of the mortgagee to secure him gives the money to the mortgagee, who pays it to the mortgager, whether or not he takes a formal assignment of the mortgage, it will not be regarded as satisfied but will be kept alive for the benefit of the person advancing the money. See *White* v. *Knapp*, 8 Paige 173; *Graves* v. *Mumford*, 26 Barb. 95; *Hoy* v. *Bramhall*, 4 C. E. Green (N. J.) 74 and 563.

In the case before us, Corrothers by the agreement of March 20, 1876, agreed to advance the funds to pay off the debt of Ryan to Fitch, the trustee. There was obviously no understanding with Ryan or with Fitch, the trustee, that the deed of trust to Fitch, trustee, was to be kept alive for the benefit of Corrothers. Fitch testifies, that his understanding was the very reverse, and therefore he gave receipts for the money to Ryan himself, as paid in satisfaction of the debt by the hands of Corrothers. It seems to me equally clear, that there was no such understanding between Ryan and Corrothers; nothing of the kind is expressed in their agreement of March 25, 1876; on the contrary it seems clear, that this was not expected by the parties, and Corrothers did not then rely on the deed of trust to Fitch, as his security for the money he was to advance, but he took a new mortgage from Ryan and his wife on this land, to secure his advances. The

parol evidence too shows that, at that time he expected to have to pay these five judgments against Ryan, evidently regarding them as prior liens to the one he relied upon.

All this is inconsistent with the idea, that there was any understanding by Corrothers with any one at that time, that the deed of trust to Fitch though paid off was to be regarded as kept alive for his Corrothers's benefit. This deed of trust must therefore be regarded as paid off by the express agreement of the parties, and that it was paid by Corrothers with the understanding, that it was fully satisfied; in fact he expressly contracted to do so. On the face of the deed executed to him this is expressed to be the very consideration, on which the deed was made.

When the circuit court held, that he was entitled by subrogation to the benefit of this Fitch deed of trust, of September 13, 1875, it must have done so on the assumption, that the transaction between him and Ryan of March 25, 1876, was not a mortgage or such a transaction as we regard it, but was either an absolute or conditional sale. And so regarding it under such decisions as *Barnes et al.* v. *Mott*, 64 N. Y. 397, and *McClaskey & Crim* v. *O'Brien*, 16 W. Va. 791, even had this deed of March 20, 1876, been an absolute sale, it seems to me under these and other decisions, that Corrothers could not have been subrogated to the rights of the creditors of Ryan, under this deed of trust of September 13, 1875. But this question I have not considered, as it does not arise; the deed of Corrothers of March 20, 1876, being clearly a mortgage.

It is claimed, that Corrothers committed a gross fraud on the creditors of Ryan, when he took a bond from Ryan with security for two hundred dollars, either in satisfaction of his five hundred dollar debt against Ryan, or as a bonus for consenting to the compromise made by Ryan with his creditors. That it was taken as such bonus and not as a satisfaction is obvious from the fact, that with Ryan's assent, he took his dividend on this debt from Fitch, the trustee. This was a fraud on Ryan's other creditors, but Ryan was fully as much implicated in it, if not more so, than Corrothers. It was a matter to be dealt with by the federal court, if it had been brought to its notice, which I presume was not done. At

any rate this Court has in this case nothing to do with it. The two hundred dollar bond has been surrendered, and the improper giving of it can in no way affect this case. It has been urged too, that the debt due to Corrothers ought not to be provided for by the court, because he was guilty of fraud in refusing, it is claimed in violation of his contract of March 20, 1876, to make deeds to Brown, Lyons or McClure, whereby Ryan has been grossly wronged.

If this be true, Ryan's remedy is clearly not in this suit. Corrothers was guilty of no fraud in making the contract of March 20, 1876, and is entitled in this suit to the benefits it conferred on him, even though he subsequently violated this contract, by refusing to make these deeds. Whether he did or not cannot be enquired into in this case. These questions in no manner arise out of the pleadings and proofs, on the part of the plaintiff and defendants, in this suit. And it is well settled, that a decree between co-defendants can only be based upon the pleadings and proofs between complainants and defendants, and that no such decree can be made between co-defendants founded on matters not stated in the bill, nor in litigation between the plaintiffs and defendants or some of them. See *Vance* v. *Evans et al.*, 11 W. Va. p. 370; *Elliott* v. *Pell*, 1 Paige 263; *Jones* v. *Grant*, 10 Paige 348; *Tripp* v. *Vincent*, 3 Barb. Ch. R. 613; *Buffalow* v. *Buffalow*, 2 Ired. Eq. R. 113. These matters were foreign to the objects of this suit.

It is also claimed by Ryan, that three hundred dollars was to be paid to him by Corrothers as a mere gift. This statement of Ryan is in the highest degree improbable, and the reason assigned for not inserting it in the agreement of March 20, 1876, is to me unintelligible. It is also unsustained by other evidence, and is denied by Corrothers. It is not improbable from the evidence, that there was some other understanding, probably a very indefinite one, that Corrothers would loan him some other money for his private purposes. But if it was only to be a loan, as I presume it was, Ryan has suffered no loss from its not having been made. The evidence would certainly have to be much stronger than it is to induce the belief, that Corrothers was to make him a gift of this three hundred dollars. But in

truth, no amount of proof could have been received in support of this provision to the agreement of March 20, 1876, when it appears, as it does, that it was purposely left out of it.

I have considered this cause as if the decree of March 24, 1879, as well as the decree of July 14, 1879, was before us for review, but the most of the errors assigned in the petition for an appeal, were errors on the first of these decrees. They have been argued as if this decree had been appealed from, and of course if we deemed there was any technical obstacle in the way of reviewing the decree of March 28, 1879, we would amend the order granting an appeal in this cause, and include in the appeal this decree also; but as it has been treated as though it had been appealed from by the counsel of the appellee, Corrothers, as well as by the counsel for the appellants, we deem it unnecessary to go through the form of amending the order granting the appeal, and will determine this case as if this decree of March 28, 1879, had been formally appealed from.

It was, from what we have said, so defective in confirming the report of Commissioner Brown, that it should be reversed not in part but altogether. This report of Commissioner Brown, ascertained the principal debt against Ryan upon an entirely improper basis; assuming as its basis, that he was entitled to the money, which he had paid to Fitch, the trustee, when he was really entitled to the money, which he had advanced for the use of Ryan, under the agreement of March, 20, 1876, and also to the balance due him on his old debt of five hundred dollars, due from Ryan to him before Ryan was declared a bankrupt. But there was a still graver error in Commissioner Brown's report, that of reporting the debt of Corrothers as the first lien on the land of Ryan, when in fact it was the last of those, which were reported; it being a lien only as from March 20, 1876.

When these errors are corrected, it will leave nothing of Brown's report, except the report of the judgment-liens, about which there is no controversy. I say no controversy, for it is obvious, that the sureties of Ryan who paid the judgment in favor of the Morgantown bank, are entitled to the benefit of this judgment by substitution. The entire decree

therefore of March 28, 1879, must be reversed and set aside. I say the entire decree because though that portion of it which directed a sale of the land would not be set aside if a sale under it had been made and properly confirmed, yet as the sale under it was improperly confirmed by the decree of July 14, 1879, the whole of this decree of March 28, 1879, should be reversed.

There was an upset bid of five hundred dollars offered the court on the price formerly bid, which was more than twenty per cent. on the price at which the land was knocked off. It is true that Corrothers agreed to have credited on his debt, which had been declared a prior lien on this land, the price he had bid upon it, two thousand three hundred dollars, and also five hundred dollars more, the amount of this advanced bid. But as we have concluded that Corrothers has no first lien for any amount, on which to credit these sums, and as he did not indicate his willingness to give this five hundred dollars more, except as a credit on his debt as a first lien on this land, this Court can not properly decree him to pay this two thousand eight hundred dollars for this land. Nor can it at this late day, after nearly three years have elapsed, hold G. W. Johns to his advanced bid of five hundred dollars; and therefore the entire decree of July 14, 1879, should be likewise reversed and annulled.

There is no necessity to make Job Hartley a party defendant in this cause. His land was not embraced in the deed of March 20, 1876, to Corrothers, as I understand; it having been previously sold by Ryan, nor do I suppose, that the judgments against Ryan are liens upon it. And if they were, its sale is entirely unnecessary to pay off these judgments, as the other lands of Ryan are first bound for them, and Corrothers does not even claim, that he has any lien upon this land of Job Hartley's. The circuit court will only have, when it again decrees this land to be sold, to except from the quantity so sold this land of Job Hartley's.

After reversing these decrees of March 28, 1879, and July 14, 1879, and decreeing that the appellee, John W. Corrothers, do pay to the appellants their costs in this Court expended, this Court will render such decree as the court below should have rendered, referring this

cause to a commissioner to ascertain the liens on said land and their amounts and priorities, with such instructions as will accord with the views we have expressed; and this cause must be remanded to the circuit court of Monongalia county, to be further proceeded with according to the principles laid down in this opinion, and further according to the principles governing courts of equity.

JUDGES JOHNSON AND SNYDER CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.