# CHARLESTON

### DAVISSON v. SMITH et al.

Submitted June 7, 1906.    Decided October 30, 1906.

1. USURY—*Cancellation of Deed—Usurious Consideration.*

   A conveyance of land, founded upon compensation for the use of borrowed money, in excess of the rate of interest allowed by law, as the sole consideration therefor, will be set aside in equity. (p. 418.)

2. SAME—*Conveyance as Collateral Security.*

   When such conveyance is collateral to the loan, and notes for the full amount of the money lent, including interest thereon at the full legal rate, have been executed by the borrower and payment thereof secured by a deed of trust, and, before suit is instituted to set aside the deed, the money borrowed and all legal interest thereon has been paid in money, the value of the real estate conveyed will not be treated as a credit on the debt or the legal interest thereon, as of the date of the conveyance, and the borrower thereby limited to a recovery in money. (p, 419.)

3. SAME—*Remedies of Parties.*

   In the enforcement of the statutes for the suppression of usury, courts do not disturb, overthrow or annul contracts to an extent beyond the necessity of the case; but there is no restraint upon their power to treat principal and collateral transactions, entered into with intent to evade the law against usury, as a single transaction, when enforcement of the statute, liberally construed, renders such action necessary. (p. 420.)

4. SAME.

   Since the statute of this state nullifies usurious contracts only to the extent of the interest stipulated for or taken, in excess of the legal rate, when the payment of such excess, or the agreement to pay it, has been made, by express agreement of the parties, wholly collateral to the principal transaction, the proceeding for relief, either at law or in equity, may be limited to the collateral payment, delivery, transfer, conveyance, or agreement. When the illegal, has been so separated from the legal, part of the transaction, courts will not unite them, if relief can be given without doing so, nor is either of the parties entitled to have them treated as a single transaction. (p. 420.)

5. SAME—*Delay in Seeking Relief.*

   Delay, for a period of three years after the payment of the debt and interest, in suing to set aside a conveyance, the sole consideration whereof is usurious interest, does not bar relief, as between

the parties thereto, under the operation of either the statute of limitations or the principle of *laches*, although there has been an appreciation in the value of the land, not due to any outlay in money or labor on the part of the grantee.   (p. 422.)

Appeal from Circuit Court, Harrison County.

Bill by M. B. Davisson against T. B. Smith and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

JOHN BASSELL, for appellants.

J. E. LAW, for appellee.

POFFENBARGER, JUDGE:

Thomas B. Smith and Daniel S. Smith complain of a de-cree of the circuit court of Harrison county, made and entered on the 23rd day of October, 1905, in the chancery cause of Marcellus B. Davisson against the appellants and the South Penn Oil Company, requiring said appellants to execute a deed re-conveying to Davisson a one-half interest in and to all the oil and gas in and under a tract of fifty acres of land situated in said county, the court having found and determined that the sole consideration for the conveyance of said interest in the oil and gas to the appellants by Davisson was compensation for the use of money, in excess of the legal interest thereon.

Davisson, being the owner of the tract of land, obtained from the appellants, on the 5th day of May, 1899, a loan of $550.00, evidenced by his five promissory notes payable one, two, three, four and five years after date, with interest thereon from date, the first four of which were for $100.00 each and the last one for $150.00, and executed a deed of trust on the land to secure the payment thereof.   On the 6th day of May, 1899, Davisson and his wife executed a deed conveying to the appellants one-half of the oil and gas in and under the tract of land.

On the 19th day of February, 1900, the appellants exe-cuted to the South Penn Oil Company a lease on said land for oil and gas purposes, under which, at some time in the year 1904, said company entered upon the land and began to develop it for oil and gas, and their operations resulted, on

or about the 27th day of June, 1904, in the discovery of oil in paying quantities.

Meanwhile, Davisson, in June, 1901, having made a sale of the coal under the tract of land, had paid off his entire indebtedness to the appellants, including the interest thereon at the legal rate. At July Rules, 1905, he filed his bill, setting up the facts hereinbefore stated, and charging that there was no consideration for the conveyance of the oil and gas to the appellants, other than the loan hereinbefore described, that said conveyance was made as compensation, for the use of the money borrowed, in excess of the legal interest thereon, stipulated for in the notes and secured by the deed of trust. He prayed that the deed be canceled and annulled, that the lease, executed by the appellants to the South Penn Oil Company, be canceled, that an injunction be awarded, inhibiting said company from delivering to the appellants any part of the oil produced from the premises, and that a receiver be appointed to take charge of the one-half of the royalty, or one-sixteenth of the oil produced, which was claimed by the appellants, as well as the cash rentals which might accrue from gas wells under the lease. The South Penn Company claimed protection as a *bona fide* purchaser for value without notice, and the appellants denied that the consideration for the conveyance was usurious interest, but claimed, that, if the court should be of the opinion that it was, the measure of relief to the plaintiff would be a decree for money, equal in amount to the value of the interest conveyed at the time of the conveyance thereof, with interest thereon from the date of the conveyance. The court, upon the hearing of the cause, upon its merits and with the consent of the plaintiff, held the South Penn Oil Company to be a purchaser for value without notice, and set aside the deed as to the appellants Thomas B. Smith and Daniel S. Smith.

The denial by the appellants of the usurious character of consideration, is based upon the circumstances under which the loan was made. Davisson, having no means of his own, except a one-fifth interest in the land, desired to purchase the interests of his three brothers and a sister therein. It required about $550.00 to accomplish this and pay delinquent taxes for which it was about to be sold. Unable to obtain the money elsewhere, he applied to the appellants, who, after

much importunity on his part, not being money lenders themselves, agreed to let him have it, he agreeing to convey to them half of the oil and gas in the land. Pursuant to this understanding, the interests of the brothers and sister were conveyed to Davisson, paid for by him with money furnished by the Smiths, the notes and deed of trust executed and delivered and the deed made conveying the oil and gas interest. Upon these facts, and the oral testimony of the appellants, is based the argument and contention that the appellants entered upon the transaction, not as lenders of money, but in the dual character of money lenders and purchasers of an interest in the land. The fact that they took the obligation of Davisson for all of the money they furnished him, together with the interest thereon at the full legal rate, amply justifies the finding and conclusion of the court below that they were not in any sense purchasers. It is perfectly apparent that they took the oil and gas for the use of the money furnished. No other benefits exchanged for it accrued to Davisson or to his brothers and sister, who owned four-fifths of the land at the time the agreement was made. Nothing but the use of the money could be regarded as consideration for the land, and, as full legal interest was provided for in the notes and the security taken, the interest represented by the value of the oil and gas, added to the interest stipulated for in the notes, made the transaction undoubtedly an usurious loan, and precluded the theory of a purchaser.

The principal complaint of the appellants is predicated upon the action of the court in depriving them of the title to the oil and gas, instead of giving a decree against them for the value thereof at the date of the conveyance with interest. This objection is founded upon two different theories, one of which is that both the common law and statutory remedies contemplate a money recovery in all cases in which a debtor sues to recover usurious interest, and the other that a conveyance founded on a usurious consideration is neither void nor voidable.

For the first proposition the rule laid down by this Court in *Davis* v. *Demming*, 12 W. Va. 246, is referred to. That was a general rule applicable under the circumstances which usually attend usurious transactions. Ordinarily, usurious interest is paid in money. No expression in the opinion in

which that rule was prescribed indicates that it was intended for universal application.    Like all other general rules and principles, it is necessarily subject to such exceptions as peculiar circumstances necessitate.    The right to recover property delivered, as and for compensation for the use of borrowed money, in excess of the legal rate of interest, is affirmed by numerous decisions of the courts.    Webb on Usury, at section 479, says:    ''In England it was settled long ago, that an action of trover was maintainable against an usurious bailee, after demand and refusal, without offering or tendering the principal sum, or any part thereof, as the action was strictly legal and the deposit void.''    To sustain this proposition a number of well considered decisions are cited, in which both trover and replevin have been recognized as proper remedies for the vindication of the borrower's rights respecting personal property so delivered.

These cases, however, arose under statutes which made the entire contract void, not merely so much of it as related to the excessive interest.    Though under our statute usurious contracts are void only as to the interest therein provided for in excess of the legal rate, the principle declared by the courts in those jurisdictions in which the entire contract is void seems to meet and overthrow the contention, that the property given for an usurious consideration cannot be recovered under our statute.    If property so given under a contract wholly void may be recovered, it logically follows that the property parted with as compensation for the use of money in excess of the legal rate, to which extent the contract is void under our statute, may also be recovered, and the borrower is not limited to the recovery of the value thereof at the time of its delivery.

A plausible argument of counsel for the appellants is that if the real estate conveyed is to be regarded as the equivalent of the payment on account of the interest, it was the first payment made and ought to be applied on the debt as a credit as of the date of the conveyance, and the money afterwards paid should be credited on the residue of the indebtedness to the extent necessary to satisfy it, and the legal interest thereon, and that the recovery ought, therefore, to be not of that which was first paid or given as interest, but of that which was last so given, no usurious interest having been paid, in

the opinion of counsel, until after the debt and the legal interest thereon had been satisfied, and the real estate parted with, having been conveyed before that stage of the transaction was reached.

No authority is produced to sustain this claim, nor is it consistent with the terms in which the parties clothed their contract.   That the oil and gas interest conveyed was intended to be not merely interest on the debt, but interest in excess of the legal rate, is perfectly apparent.   It was not credited on the debt at the time.  The conveyance having been made on the next day after the notes were executed, and the agreement therefor having preceded the execution of the notes, these instruments were given for the full amount of the principal and interest at the full legal rate.   The conveyance therefore must have been for interest in excess of the legal rate *eo nomine*, which the statute declares to be void.   Though the taking of a separate obligation for the excess of interest above the legal rate, does not free the entire transaction from the taint of usury, (29 Am. & Eng. Ency. Law 484), still no reason for holding that the parties cannot determine, or have not determined, what particular payment or obligation shall represent, or be regarded as made on account of, the usurious interest, is perceived, and, moreover, there are well considered decisions which assert, not only that it can be and is done, but also that the courts will recognize the binding force of such stipulations, and treat the particular payment as one of usurious interest *eo nomine*.   In *Stevens* v. *Fisher*, 23 Vt. 272, 274, Redfield, J., speaking for the court, said: "But the defendant received the money.  If he received it as interest, *eo nomine*, whether it was in pursuance of any corrupt previous agreement, or not, is immaterial.   It is none the less usury, whether the agreement was contemporaneous with the lending, or made subsequently—whether made before the receipt of the money, or at the time—whether the money was paid in advance, or reckoned into the note and paid with the principal sum; whenever paid as usury and *eo nomine*, it creates an immediate right of action.   The question, whether, at the time of the loan, or agreement to forbear payment, there was any agreement to pay and receive more than legal interest, was never important, except under the English statute of usury and others like it, where,

such being the case, the party receiving the illegal interest not only became liable to refund that, but forfeited the principal sum." In *Grow* v. *Albee*, 19 Vt. 540, 543, the same judge said: "But when, for aught which appears, the contract was not originally tainted with usury, and when no such taint enters into its renewal, the payment of money, as usury, *eo nomine*, is the consummation of an unlawful payment and may be recovered back, whether the debt is paid or not. It has no legal connection with the original contract or security whatever, and the right to retain it is in no way effected by any proceedings had in regard to the original security." These cases arose under statutes which, like ours, did not forfeit the principal of the debt, but only avoided the contract as to the interest reserved or taken in excess of the legal rate. The difference between the legal and sequential effects of a statute which so provides and one which avoids the entire transaction, imposing severe penalties, is very great and affords ample ground for discrimination in the interpretation and construction of contracts arising under them, the application of remedies and the modes and measures of relief. Under a statute, destroying or forfeiting the principal and all interest, it is necessary to look beyond the written instrument, evidencing an apparently valid debt, to collateral undertakings, verbal or written, for the payment of additional interest in excess of the rate allowed by law, and consider them all as one transaction. Otherwise the statute could be evaded with impunity. 29 Am. & Eng. Ency. Law 484. But, even there, a collateral verbal agreement to pay such excess is frequently held not to render the debt usurious, unless it be carried into effect by payment. *Butterfield* v. *Kidder*, 8-Pick. (Mass.) 512; *Kochler* v. *Dodge*, 31 Neb. 328. The distinction between the effect of the two kinds of statutes is recognized in *Bowers* v. *Douglass*, 2 Head (39 Tenn.) 376, in the following clear and emphatic terms: "Here, the note was for the actual amount of the loan. And, inasmuch as, by our law, the effect of usury is only to avoid the contract to the extent of the excess beyond the legal rate of interest, it follows that there can be no valid objection to a recovery on the note. The collateral, independent, verbal agreement, for usurious interest on the loan, does not, in any way, affect the validity of the note. This latter agreement, though illegal and void,

is, in legal contemplation, separate and distinct from the contract evidenced by the note. The case, therefore, is wholly unlike the case of *Hutchins* v. *Turner*. In the one case, the note itself was tainted with usury; in the other, the note is free from any such taint." To the same general effect see *Roberts* v. *Coffin*, 22 Tex. Civ. App 127. Nor has this Court failed to notice the difference. In *Watterson* v. *Miller*, 42 W. Va. 108, 110, JUDGE BRANNON said: "True, Watterson made an oral promise to pay two *per cent.* more, but that was outside the papers under which the sale was to be made. All payments had been credited on the notes, and nothing was applied to illegal interest. Watterson did execute to Miller a note for fifty dollars illegal interest, but that was no lien on the land, and the sale was not to be made for it."

The principal and collateral transactions are plainly regarded, by all courts, as separate and distinct, except in so far as it is necessary to treat them otherwise, in order to vindicate and enforce the law for the suppression of usurious transactions. Contracts, as made are allowed to stand and are enforced to the full extent of consistency with law, and are overthrown only to such extent as the enforcement of the law necessitates. As the parties to the deed in controversy here manifestly intended and agreed that the sole consideration of the conveyance of the oil and gas should be compensation for the use of money in excess of the legal rate, and the vice in the transaction can be eliminated without, in the slightest degree, altering that agreement, or disturbing the securities given for the principal of the debt and legal interest thereon, the court will not go out of its way to do more than give relief by undoing the usurious part of the transaction. Why should it? How can it, in view of the principle above stated, plainly deducible from the authorities?

A principle above adverted to, namely, that courts, in order to vindicate the law by uncovering and punishing usury, no matter in what form the transaction is clothed, will consider and act upon two separate contracts as one, when it is necessary to do so, would no doubt justify us in regarding the real estate conveyed as security for the debt, and, it having been paid, decreeing a re-conveyance thereof, or cancelling the deed. Though it represents nothing

advanced that, by the terms of the contract, was to be repaid, this circumstance does not differentiate this from other usurious transactions. There is never any stipulation for repayment, but the law steps in and enforces it, and, as soon as the debt is fully paid, sets aside the deed. As to so much of the transaction as is usurious, the law presumes that all payments and transfers have been coerced by the creditor and regards him as having fraudulently acquired them. *Harper* v. *Building Association*, 55 W. Va. 149, 157; *Barbour, Stedman & Herod* v. *Tompkins*, 58 W. Va. 572; *Moseley* v. *Brown*, 76 Va. 419; *Browning* v. *Morris*, Cowp. 294; *Thomas* v. *Shoemaker*, 6 Watts & Serg. 183.

To allow the appellants to retain the gas and oil and pay a sum of money in lieu thereof as and for its supposed value at the time the conveyance was made, would give them the status of purchasers for a good and valuable consideration, contrary to the plain and emphatic denunciation of invalidity upon the contract, as made by them, pronounced, not by the court, but by a statute which all courts liberally construe and rigidly enforce. By express provision, it arms courts of equity with power to compel the lender to discover upon oath the money or thing really lent, and all bargains, contracts or shifts relative to such loan, and the interest or consideration of the same, and declares that if it appear that more than lawful interest was reserved, the lender shall recover his principal money or other thing with six per cent. interest only. Here money only was lent. That with six per cent. interest is all the appellants could demand. The outside transaction was plainly such a shift and device to cover the taking of unlawful interest, as a court of equity has power to inquire into and relieve from. Its duty would be but poorly performed, if it should now undertake to allow the lenders to keep the property, by attempting to ascertain and decree against them the value thereof. That would be the adoption of an uncertain measure of restitution, without any reason or necessity for such a course. *Porterfield* v. *Cainer*, 4 Grat. 55, has no application to a case of this kind. The value of the land was put in issue in that case to determine whether more than lawful interest had been taken.

The other proposition, namely, that a deed made in consideration of an usurious debt, cannot be set aside, would

cut off an important branch of equity jurisdiction in this State. It ignores the jurisdiction and power of courts of equity to declare deeds absolute on their faces to be in fact mortgages, and set them aside on payment of the debt. Interest on money involved in a transaction, whether usurious or legal, necessarily implies a debt due from the party paying, or obligated to pay, the interest, and if a deed, conveying land, was, in point of fact, intended, by the parties thereto, to be no more than a security for money, due from the grantor to the grantee, it will be so treated in equity and the rights of the parties thereto settled accordingly. *Sadler* v. *Taylor*, 49 W. Va. 104; *Vangilder* v. *Hoffman*, 22 W. Va. 1; *Hoffman* v. *Ryan*, 21 W. Va. 415; *Lawrence* v. *Dubois*, 16 W. Va. 443; *Mathews* v. *Sanford*, 26 W. Va. 386.

This doctrine is not recognized at all in the early Massachusetts and Maine decisions, cited as supporting the proposition asserted by counsel for the appellant, namely, *Hale* v. *Jewell*, 7 Me. 435; *Richardson* v. *Field*, 6 Me. 37; *Boardman* v. *Rose*, 13 Mass. 104, and *Flint* v. *Sheldon*, 13 Mass. 443. They proceed upon the theory that a deed absolute on its face cannot be shown by parol evidence to be in fact a mortgage, for the reason, among others stated that the effect of admitting such evidence for that purpose is to allow the terms of a written instrument to be contradicted by parol evidence. As the matter of interest could not be reached until after the ascertainment of a debt, and indebtedness could not be shown without violation of the rule against parol evidence, the courts declared the matter to be beyond their reach. As the cases all arose in courts of common law, the rulings were no doubt correct. However, that may be, the equity courts of this State have never been hampered by difficulties of that sort, as will abundantly appear from an examination of the decisions above mentioned and others of the same class, which may be readily found.

As the subject matter of this suit belongs to the exclusive jurisdiction of the equity courts, the statute of limitations is not applicable. *Newman* v. *Kay*, 57 W. Va. 98. Nor do we perceive any circumstances which will justify the application of the principle of *laches*. There has been an appreciation in value, and a lapse of time, but the appellants have done nothing which in any material respect has contributed

to the increase in value. They have spent no money on the property, and have not been in any sense prejudiced by the delay. On the contrary, they have profited by rentals, accruing from the lease. Moreover, the peculiar nature of this transaction precludes strictness in the application of the doctrine of *laches*. Tested by equity principles, the deed might be treated as a mortgage, and equities of redemption are not barred, except by the lapse of long periods of time. "Once a mortgage, always a mortgage." Moreover, the possession of the appellee, until about one year prior to the institution of this suit, was complete and uninterrupted. As between him and the South Penn Oil Company, *laches* would no doubt bar relief. *Societe Fonciere et Agricole Des Etats Unis* v. *Milliken*, 135 U. S. 304. The decision just cited clearly marks the distinction.

As no error in the decree is perceived, it will be affirmed.

*Affirmed.*