DEBORAH ANN TERWILLIGER, Respondent, *v*. JAMES H. BROWN, impleaded with others, Appellant.

The rule which forbids an executor to purchase, or be interested in the purchase of real estate sold to pay debts, is violated, if the executor becomes interested before confirmation, although not until after the property is struck off; and the sale is thereby rendered void.

The facts that the fair value of the premises was bidden, and the sale was afterward confirmed, *ex parte*, will not give it validity.

Nor is it material that the agreement, by which the executor became interested, might be void under the statute of frauds.

In a proceeding under the statute for the sale of real estate to pay debts of a testator, B., an auctioneer employed by the executor, bid in the premises himself, and, before confirmation of the sale, made an arrangement with the executor, by which they were to be jointly interested in the purchase. The sale was subsequently confirmed by the surrogate, *ex parte*, and, a few days afterward, the executor executed a deed of the premises to B., and, on the same day, received from B. a deed to himself of one-half thereof.—*Held*, that the sale was void, both because B., who purchased, was an agent of the executor in making the sale, and because the executor became interested before the sale was consummated.

(Argued September 29, decided December 29, 1870.)

APPEAL from an order of the General Term of the Supreme Court in the third district, affirming a judgment in favor of the plaintiff, rendered in an action to

set aside the sale of certain real estate of Joseph Ellis,
deceased, made by order of the surrogate of Ulster county,
upon the application of David Ellis, the executor of said
Joseph, for the payment of debts. The cause was tried
at the Ulster circuit on the 21st day of January, 1863, by
the court, without a jury. The facts found by the court
and the conclusions of law are substantially as follows : That
the will of Joseph Ellis, deceased, was duly admitted to pro-
bate by the surrogate of the county of Ulster, and letters
testamentary issued thereon to David Ellis. On the 1st day
of October, 1861, an order was made establishing the debts
at $276.23, and a further order, made upon the same day,
authorizing the executor, David Ellis, to sell for the non-pay-
ment of debts. On the 25th day of November, the defendant,
Brown, officiating as auctioneer, struck the premises off to
himself for the sum of $615. After the auction, and before
presentation of the report to the surrogate and confirmation
of such sale by the surrogate, and before the payment of the
purchase-money and delivery of the deed to Brown, an
arrangement was made by and between Brown and Ellis, the
executor, by which Ellis became equally interested with
Brown in the purchase. On the 10th day of December the
defendant, Ellis, presented his report of sale to the surrogate,
whereby he reported that the property had been sold to
James H. Brown for the sum of $615 ; that fifteen per cent
had been paid down, and the balance was to be paid upon
the delivery of the deed. On the same day the surrogate
made an order confirming the sale, and directing a convey-
ance to the purchaser. On the 14th day of December, Ellis,
as executor, executed a deed to Brown of the premises, for
the consideration therein expressed of $615. On.the same
day, Brown, by deed, conveyed the one equal undivided half
part of the premises to Ellis, for the consideration, as therein
expressed, of $307.50. Both deeds were acknowledged on
the same day, and before the same officer. On the 10th day
of January, 1862, the defendants, Ellis and Brown, with their
wives, in consideration of $600, conveyed by quitclaim to

the defendant, Sarah Jane, wife of David Berrian, about five acres of the premises. On the 22d day of January the defendants, Brown and Ellis, with their wives, for the consideration of $400, sold and conveyed to Hannah Deyo another portion of the premises. The remainder of the premises, about thirty-three acres, is still in the hands of Brown and Ellis. The defendants have realized, in money and securities, upon the aforesaid sales, and also from the proceeds of wood, timber and hoop-poles, about the sum of $900. From the foregoing facts, the judge found the following conclusion: That the plaintiff, Deborah Ann Terwilliger, is entitled to the one undivided seventh part of the property whereof Joseph Ellis died seized. That the sale and conveyance by Ellis, the executor, to Brown, and the conveyance by Brown to Ellis of the undivided half part of the premises, are both fraudulent and void as against the plaintiff, Deborah Ann Terwilliger, and the devisees of the said Joseph Ellis, deceased. That as to so much of the real estate of Joseph Ellis, deceased, as was not conveyed to Hannah Deyo and Sarah Jane Berrian, the plaintiff is entitled to the one undivided seventh part thereof, in fee, in the same manner and to the same extent as if such executor's deed had never been executed. That the defendants, Brown and Ellis, shall account for and pay over to the plaintiff the one-seventh part of the proceeds of the sale of the real estate, and of the wood and poles cut thereon. Judgment having been entered in conformity with this decision, the defendant, Brown, appealed to the General Term of the Supreme Court, and the judgment having there been affirmed, he appealed to this court.

*T. R. Westbrook,* for the appellant, urged that the order of the surrogate was conclusive in this action. (*Jackson* v. *Robinson,* 4 Wend., 436; *Jackson* v. *Crawford,* 12 Wend., 533; *Atkins* v. *Kinnan,* 20 Wend., 242; *Dabke* v. *McLaren,* 41 Barb., 491; *Sipperly* v. *Baucus,* 24 N. Y., 46.) That the appellant did not become interested in the purchase, within the statute, having no interest at the time of the auction; that

the plaintiff is estopped by knowledge of the purchase and making no objection, and by having received the benefit of the purchase-money applied in discharge of debts; and that it was error to give to the plaintiff one full seventh without provision for the protection of the defendants as to moneys paid to creditors. (*Wakeman* v. *Green,* 4 Paige, 23; *Ames* v. *Blunt,* 5 Paige, 13; *Averill* v. *Loucks,* 6 Barb., 471; *Butler* v. *Stoddard,* 7 Paige, 163.)

*M. Schoonmaker,* for the respondent, insisted, among other things, that the sale was not complete until conveyance. (Jacob's Law Dic., Title Sale; Webster's Dic.; 13 Wend., 470.) No trustee can sell to himself, directly, or indirectly (*Boerum* v. *Schenck,* 2 Hand., 132), and Brown was, as to this sale, a mere sub-agent. (Willard's Eq., 322; *Moore* v. *Moore,* 5 N. Y., 256.) The trustee was bound to account for the proceeds. (2 Story Eq., §§ 1261–5.) None of these questions were raised before the surrogate, and his order does not assume to pass upon the objection urged in this suit.

Earl, C. The law exacts scrupulous good faith on the part of him who acts as trustee for another, or holds any other fiduciary relation to another. A trustee is not permitted to purchase the trust property, or be directly or indirectly interested in such purchase. He is not permitted to make the purchase as agent for another, or through an agent for himself. And it matters not if he pays all the property is worth, nor if the sale is advantageous to the *cestui que trust.* It is a matter, of course, for courts of equity to set the sale aside upon the application of the *cestui que trust.* The object of the rule is to afford the *cestui que trust* the most ample protection against fraud and injustice, and to remove out of the way of the trustee all inducements and temptations to speculate upon the trust property, or to manage and manipulate the same for his own benefit. This rule applies to executors and administrators as well as to other agents, and it prohibits one from being the purchaser of property which he is under

a duty to sell for another, and from being the seller of property which he is under a duty to purchase for another.  Willard, in his Equity Jurisprudence, at page 189, says: " It is a rule which applies universally to all who come within the principle, which principle is, that no party can be permitted to purchase an interest in property, and hold it for his own benefit, when he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser on his own account, or for his individual use.  And a sub-agent is just as much disqualified as an agent is to make a purchase in opposition to the rights and interests of his principal."

These are familiar principles which have always been recognized and acted upon in courts of equity.  (*De Caters* v. *Le Ray De Chaumont*, 3 Paige Ch., 179 ; *Davoue* v. *Fanning*, 2 Johns. Ch., 257 ; *Hawley* v. *Cramer*, 4 Cow., 735 ; *Cruger* v. *Ring*, 11 Barb., 364 ; *Moore* v. *Moore*, 5 N. Y., 262 ; Story's Eq. Jur., 322.)

Sales and purchases made by trustees in violation of this rule were not held to be absolutely void, but voidable at the election of the *cestui que trust*.  (*Forbes* v. *Halsey*, 26 N. Y., 65.)  But this rule was extended by the Revised Statutes (2 R. S., 104, § 27) so as to make such sales when made in violation of the rule by executors and administrators under the order of a surrogate, in proceedings to sell real estate for the payment of debts, absolutely void.  This section is as follows : " The executors or administrators, making the sale and the guardians of any minor heirs of the deceased, shall not directly or indirectly purchase or be interested in the purchase of any part of the real estate so sold.  All sales made contrary to the provisions of this section shall be void."  In this case, the defendant, Ellis, made the sale through Brown as his agent, and Brown became the purchaser.  Brown held the position of a sub-agent in making the sale ; and, aside from and independently of the statute above cited, within the equitable principles above stated, he could no more become the purchaser than his principal, Ellis.  If the

statute had never been passed, any one of the parties interested could have come into a court of equity and had the sale set aside. The reason of the rule embraces this case just as fully as if Ellis had made the sale in person and himself become the purchaser. Hence, if the statute had never been passed there would have been abundant reason for sustaining the decision below invalidating the sale in question.

But I think the statute clearly embraces this case. The statute (2 R. S., 105, §§ 29 and 30) requires the executor or administrator immediately after the sale, to make a return of his proceedings to the surrogate, who is required to examine the proceedings, and he may examine the executor or administrator, or any other persons, touching the same; and if he shall be of opinion that the proceedings were unfair, or that the sum bid is disproportionate to the value, he shall vacate the sale and direct a new sale; and if it shall appear to him that the sale was legally made and fairly conducted, and that the sum bid is not disproportionate to the value, he is required to make an order confirming the sale and directing a conveyance. It will thus be seen that the sale is inchoate until the final order of the surrogate. All the proceedings until this order shall be made are but successive steps in making the sale. Until such order, the fidelity of the executor or administrator is required and relied on. There are strong reasons why the statute inhibition should continue and the executor or administrator should not obtain an interest, in the sale or the real estate sold, hostile to those whom he represents until such order shall be made. He is expected to make a faithful report of the sale, and he should be in a position where he would have no temptation to sacrifice the interests of those whom he represents in the investigation which the surrogate is required to make.

Here the executor, after the sale and before his report to the surrogate, became interested to the extent of one-half in the real estate sold, and hence within the meaning of said section 27 he was interested in the purchase, and the sale was therefore void.

It is claimed on the part of the appellant that the objection to the sale should have been made before the surrogate, and that the order of confirmation is final and conclusive. The statute does not require any notice to be given to the parties interested in the proceedings to confirm, and in this case it does not appear that any notice was in fact given. The order was made *ex parte*, and it does not appear that the surrogate or any of the parties interested knew of the objection. The objection was not made to the surrogate, and the question was not litigated before him, and there was no opportunity to litigate it, and it would be quite extraordinary if the parties interested were, under such circumstances, concluded by the order, particularly in the face of the statute declaring the sale void. In *Forbes* v. *Halsey* (26 N. Y., 53) the sale had been confirmed, and yet it was held void in an action of ejectment for the land against subsequent innocent purchasers for value. It was held, notwithstanding the confirmation by the surrogate, that the sale was absolutely void, and that the title to the land remained in the heirs-at-law of the intestate.

It is also claimed on the part of the appellant that because the contract to purchase, made by the executor with him, was not in writing, the executor did not legally become interested in the purchase, within the meaning of the statute; his contract to purchase being void under the statute of frauds. It has never been held that the interest of a trustee in the purchase at a sale made by himself should be evidenced by some writing valid within the statute of frauds, in order to be condemned. The reason of the law does not require this, and it has always been held otherwise. There was no writing to evidence the interest in the purchase, which was condemned in the cases of *Moore* v. *Moore* and *Forbes* v. *Halsey*, above cited.

It is further claimed that the court erred in not deducting from the amount allowed to the plaintiff his share, one-seventh, of the debts paid by the executor with the proceeds of the sale. If the executor had appealed and made this claim, I should have been inclined to hold that the allowance

should have been made. But he has not appealed. He does not claim that any part of the money he has paid upon the debts should be refunded or allowed to him. The appellant paid no debts of the testator, and I do not see how he can claim any allowance on account of such payment.

The evidence of the husband of the respondent, who was a party plaintiff with her, was wholly unimportant, and could not have had any influence upon the case, and hence the objection to his competency as a witness cannot be available here.

Having thus given careful consideration to all the questions involved on this appeal, I come to the conclusion that the judgment should be affirmed with costs.

All concur. Judgment affirmed with costs.