# WHEELING.

## Matheney v. Sandford.

Submitted June 22, 1885.—Decided July 9, 1885.

1. If it is claimed, that a deed conveying a tract of land in consideration of a debt due from the grantor to the grantee was though absolute in its form a mortgage on this tract of land to secure this debt; the circumstance, that this debt was already secured by a deed of trust executed by the grantor to a trustee conveying this identical tract of land to secure this debt and nothing else, is a circumstance so strongly indicating, that the transaction was, what it purported to be, a sale of the land and an absolute conveyance of it and not a mortgage to secure this debt, that it would take very strong parol evidence and strong circumstances to justify a court in regarding it as a mortgage; and in such a case as this the circumstance, that the grantor was hard pressed for money, and the grantee was a known money-lender, or that this debt (the price paid for the land) was considerably less than the value of the tract of land, and that the possession of the land remained with the grantor for several months after without any rent paid therefor or any even professedly reserved, would be entitled to but little weight to show, that this deed absolute on its face was a mortgage, as against the circumstance, that the parties could not have thought of the transaction as the giving of a lien or mortgage on this tract of land for this debt, as a lien on this land to secure this debt already existed. (p. 401.)

2. If the trustee in the deed of trust to secure this debt without the authority or knowledge of the creditor secured thereby receives from the grantor in said deed of trust a conveyance of this tract of land to this creditor for the amount of his debt secured by this deed of trust, and the trustee simply takes this absolute deed of this grantor and debtor but in no way induces him to execute it, but the creditor and grantee on being notified of the transaction assents to it, this deed is not voidable at the instance of the grantor because of the supposed agency of the trustee in this transaction, as, when the deed was executed, the trustee was not the agent of the grantee in the deed to purchase for him this tract of land. (p. 405.)

Green, Judge, furnishes the following statement of the case :

In August, 1881, Wm. H. Matheney of Jackson county in this State owned a tract of land of 259 acres in said county, on which he lived. He was very much embarrassed, and

there were liens on his land in the form of numerous judg-
ments and a deed of trust, which amounted in the aggregate
to $1,803.62.     And as this tract of land was to be sold in a
short time, Wm. H. Matheney applied to John A. Plumer
of Marietta Ohio, who was an agent of John P. Sandford,
who lives in the country in the State of Ohio a few miles
from Marietta, for a loan of $2,000.00 to pay off these liens
on his farm.     Through John A. Palmer a loan of that amount
was negotiated.     John P. Sandford agreeing by his agent
Palmer to loan to Matheney that amount, if it was secured
by a deed of trust upon his farm in Jackson county West
Virginia.     The loan of the money to be for one year to bear
interest at the rate eight *per cent. per annum*, that being the
rate of interest, which a lender had a right to contract for in
the State of Ohio.     It was agreed, that Wm. H. Matheney
should execute a negotiable note for this $2,000.00 to John
P. Sandford or order payable one year after its date, and se-
cure the payment of this negotiable note by a deed of trust
on his said tract of land; and that John H. Riley an attor-
ney residing in Marietta, Ohio, but who practiced law in Jack-
son county, West Virginia, should be the trustee.     Wm. H.
Matheney did not know personally John P. Sandford and
did not see him pending this negotiation, it being carried on
with Plumer acting as agent for Sandford.     Neither did
Riley have anything to do with the negotiation.     He had
prior to that in other transactions been the counsel of
Matheney but had never been counsel for Sandford.     The
negotiable note for this $2,000.00 dated August 8, 1881, pay-
able to the order of John P. Sandford with interest at the
rate of eight *per cent. per annum* payable and negotiable at
the First National Bank of Marietta, Ohio, was executed; and
a deed of trust to secure it was executed and acknowledged by
Matheney and his wife conveying this tract of 259 acres to
John H. Riley as trustee.     This deed of trust was dated
August 11, 1881, and was recorded August 16, 1881.     The
money, $2,000.00 was placed by the attorney of John P.
Sandford in the hands of Riley, the person, who, it had been
agreed, was to be the trustee, on August 8, 1881.     He accord-
ing to the understanding of the parties out of it paid off all
the liens then on this tract of land of Matheney's, and the

residue of it $173.88 was paid over by him to Wm. H. Matheney, after which Matheney's agent Riley had retained $100.00 as his fee in the transaction; and then this deed of trust was executed.

When this negotiable note became due, nothing was paid upon it. The interest not having been paid for nearly a year after the note became due, Sandford directed the trustee, Riley, to sell this land at public auction to pay the debt. The deed of trust was in the form provided by our statute, and, the terms of sale not being specified in it, the statute provides that it should be sold one-third for cash and the balance in two equal instalments payable in one and two years from the day of sale. (Acts of 1882, p. 440.) The trustee, Riley, thereupon advertised this tract of land for sale at public auction to the highest bidder at the court-house of Jackson county, West Virginia, on a certain day, which was during the session of the circuit court of said county. It does not appear on what day this sale was advertised, but it was some day in August, 1883. Before the day of sale, Sandford saw the trustee, and told him, that he did not want the land, but he might on the day of sale start the land as on his own bid for a sum sufficient to pay his debt and the costs of executing the trust. This would have been just about $2,400.00. The land when set up for sale was started at that price but was not cried off, but at the request of Matheney the sale was continued from time to time till August 17, 1883. During this time other bids were made, the last bid being probably $3,200.00; such bid was made by a responsible party. But the land was not knocked down at that bid, Matheney having executed a deed for it to John P. Sandford and thus put a stop to the sale.

The circumstances, under which this deed was made are as follows : Matheney being very unwilling, that his land should be sold at the prices bid for it had requested the trustee to continue the offer for sale by postponing the sale several times. In this way it had been postponed till August 16, 1883, at which time $3,200.00 was offered for it by a responsible party, and the trustee not believing he could get more refused, though urged by Matheney, to continue the sale beyond the next day. Several days prior to that Matheney had

told the trustee, that rather than have the land knocked down at that price, which was then being offered for it, he would convey it to John P. Sandford for the amount of his debt and the costs of executing the trust, the $2,400.00, which Sandford had offered for it. The trustee told him, that if he did that, he would loose several hundred dollars. But Matheney believing from the indulgence, which had been shown by Sandford in delaying the advertisement of the land for sale on two occasions at his request and on his statement, that if it were done, he, Matheney, believed he could raise the money, he would do better to convey it to Sandford, himself, hoping that if he could raise that amount in a short time, Sandford would re-sell him the land at that price, as he was satisfied Sandford did not want the land, but did want to get back the money he had loaned him, insisted that the land should be withdrawn from sale by the trustee, and that he would convey it directly to Sandford for $2,400.00. Riley, the trustee, finally assented to this, and on the evening of August 17, 1883, he drew a deed to be executed by Matheney and wife and acknowledged by them, which for the consideration of this debt, interest and costs, conveyed this tract of land of 259 acres to John P. Sandford, which deed was dated August 17, 1883, the last day to which he had said he would postpone this public sale. This deed he gave to Matheney, telling him to think over the matter and consult his son and others, and if the next day he was still desirous of doing this, he would withdraw the land from public sale publicly and take this deed. He told him distinctly then that he could not let the opportunity pass of enforcing the trust, unless it was distinctly understood, that this deed to Sandford was to be an absolute deed and not a mortgage. He was thus particular in having this understanding, because he had been required to enforce the trust, and knew, as Matheney did, that Sandford was not willing to wait for his money longer or to take the land at a higher price than $2,400.00, and because Matheney had once before insisted that an absolute deed for a small tract of land, which he had executed, was only a mortgage.

The next day Matheney wanted the sale postponed further saying he could raise the money to pay this debt from A. B.

Birch & Co., money-lenders in Marietta, Ohio. Believing that this could not be done Riley refused to further postpone the sale, and the tract of land was again set up and was being cried at $3,200.00, when Matheney again offered the deed from himself and wife to John P. Sandford, which Riley had drawn the day before, and which was now signed and duly acknowledged for recordation. Riley remembering the trouble he had had with Matheney at a former time declined accepting this deed and stopping the sale, till he called up two respectable men and explained the matter to them in the presence of Matheney, that he Matheney proposed by this deed to convey this tract of land to Sandford, it must be understood, that it was an unconditional and absolute deed without any promise of conveyance, and that it was not to be regarded as a mortgage. Matheney having considered the matter for a few minutes in the presence of one of these parties, to whom the matter had been fully explained, and who was a bidder on this land, it is believed, at the price of $3,000.00, delivered the deed to the trustee for Sandford, Sandford had no personal knowledge of this transaction till some days afterwards. When it was explained to him, he was satisfied and on August 21, 1883 this deed was admitted to record.

The trustee was right in supposing, that a further continuance or postponement of the public sale beyond August 17, 1883, in the hope that Matheney could raise cash to pay off the whole of his debt to Sandford would be an idle waste of time. Matheney completed his attempted arrangement with Birch & Co. within some two weeks after, on September 1, 1883; but instead of raising $2,400.00 if it had been carried out, he would have raised only $800.00 in cash, and $800.00 in twelve months and $800.00 in two years. Burke & Co. agreed to advance these sums, provided Sandford would convey to them this farm with the understanding that they were to pay him $800.00 in cash therefor $800.00 in one year with interest from date and $800.00 in two years with interest from date, and with this further understanding that if he would pay them in cash within sixty days $2,600.00 for this land, they would on the receipt of $2,600.00 convey to him this tract of land ; but if he did not pay them this $2,600.00

in cash in sixty days, then the land was to be theirs, and they should thereafter be under no obligation to sell or convey it to Matheney. This proposition was made to Sandford on September 1, 1883 and he declined to accede to it; but he then told Matheney that he would do better by him than Burke & Co. proposed. That he would sell and convey the land to him for $2,500.00 in cash, if paid within thirty days, or $2,600.00 in cash, if paid to him in sixty days, which was the proposal of Burke & Co., or $2,700.00 in cash if paid to him in ninety days. But Matheney was never able to raise the money, and so this offer availed him nothing, except that he was left in possession of the land. While so in possession of it he cut about 300 cross-ties from off .the land and sold them getting and keeping the proceeds of sale. .

The option of Matheney to purchase this land from Sandford having expired December 1, 1883, and he not having exercised the option but cutting this timber from off the land and refusing to surrender possession of it, Sandford on May 10, 1874 brought an action of unlawful detainer against Matheney before E. A. Thomas a justice of said county of Jackson, W. Va. to recover from him the possession of this land. This action was tried May 30, 1884; and the justice rendered a judgment in favor of Sandford for the possession of the land. Matheney appealed from this judgment to the circuit court of Jackson; and the appeal was pending in that court, when this suit was instituted.

This tract of land was on August 17, 1883, worth intrinsically from $4,000.00 to $5,000.00. But it was a very unsalable farm being in a most miserable condition. A considerable part of it was then and had been for years grown up in bushes and briers. The fences and buildings were in a very delapidated condition, and around some of the fields the fencing was so bad as really to be in effect no fence though there were some rails around them. The condition of the farm was such, that its entire value would have been less than $100.00 per annum.

These being the facts on September 11, 1884, the judge of the circuit court of Jackson granted an injunction enjoining John P. Sandford from proceeding further in his said action of unlawful detainer against Wm. H. Matheney till the fur-

ther order of said court. The bill, on which said injunction
was awarded, was filed by Wm. H. Matheney as plaintiff
against John P. Sandford ; and in it he states the matters
above stated according to his view of them, which it is not
regarded as important here to set out. It will suffice to say
they differ in many respects from the real case as above stated.
It will suffice here to state a small portion of the facts as rep-
resented in this bill. In it this language is used :

"Riley who was acting as agent and attorney for said
Sandford assured and promised the plaintiff that said Sand-
ford wanted nothing more than his money and the interest
due thereon ; and did not want said land. That he Sandford
did not want said land sold at an inadequate price ; and after
such assurance on the part of said Sandford by his agent,
attorney and trustee said Riley, the plaintiff was induced to
execute and deliver to said Riley who was still acting as agent
and attorney for said Sandford, a paper purporting to be a
deed conveying said land to said Sandford in consideration of
said debt which at that date to-wit, on August 17, 1883,
amounted to only about $2,400.00 or less, the said land being
then worth in cash $7,000.00. That said paper purporting
to be a deed was executed and delivered under the belief on
his part induced by the assurances and promises of said Riley
acting as aforesaid for said Sandford, that upon the payment
to the said Sandford of the said debt and interest; that the
said Sandford would re-convey said land to him. * * * *
* * * "Said bidders would or might have bought said
land at said trust-sale at a fair price had not the plaintiff con-
fided in said Sandford and his said attorney and prevented
said sale by the execution of said paper. * * * The plaintiff
with the full knowledge and consent of Sandford remained on
said land, sowed a crop of wheat thereon in the year 1883, and
also planted a crop in the spring of the present year 1884;
that said Sandford treated the paper as a mortgage and
agreed with the plaintiff that he should have three months
thereafter in which to pay said debt and redeem said land."

The bill then sets out correctly the proceedings in the said
writ of unlawful detainer brought against him by said Sand-
ford and its pendency in the circuit court of Jackson and
concludes with the following prayer :

"Plaintiff therefore prays that the said John P. Sandford be made defendant to this bill and be required to answer the several allegations on oath; that said defendant, his agents, attorneys and all others acting by, through or under him be restrained, inhibited and enjoined from proceeding further in said civil action against plaintiff and from in any manner interfering with plaintiff's possession of said land or his enjoyment of the same; that said writing purporting to be a deed be declared a mortgage; that the plaintiff be permitted to redeem said land and to have said writing cancelled and declared void upon the payment to said Stanford of said trust debt and its accrued interest, and that said Sandford be compelled to re-convey said land to plaintiff, and for general relief."

This bill was demurred to by the defendant, and he also filed his answer, which not stating all the facts above set out states them, so far as they are stated, substantially as above. The bill and answer were sworn to. Certain frivolous exceptions were filed to this answer not necessary to be noticed. There was a special replication filed, which sets out that the transactions named in the bill were usurious and asks a special issue in the premises as required by ch. 104 sec. 6 of Acts of 1882. This replication was also sworn to by the plaintiff. A motion was made in vacation to dissolve the injunction, which the court did not then act on, because an amended bill was tendered, which the court permitted to be filed. In this amended bill John H. Riley as well as said John P. Sandford were made defendants. This amended bill in addition to the allegations in the original bill says: "When said land was advertised about May, 1883, the sale was suspended by said Sandford, and when it was again offered for sale, said Sandford was not present to bid on the land or to buy it, and did not bid on the land or buy it at that time, because in fact the land was not sold at all by Riley, the trustee. The plaintiff says that as trustee said Riley was the agent of the plaintiff, as well as the agent of the defendant Sanford, and bound by law to exert the utmost fairness between them; that Sandford was not present to make a contract for the purchase of the land, and never did purchase the land, and that Riley, as joint agent of both, could not sell

to himself, and that while Riley was agent for the plaintiff
and bound to protect his interests under said trust, he could
not, without fraud against the interests of the plaintiff, pro-
cure or accept the conveyance of said land to Sandford for a
grossly inadequate consideration, to-wit, less than one-half its
value; that such a transaction on the part of said Riley,
trustee, would savor so much of fraud as to make it against
public policy and obnoxious to the fair judgment of a court
of equity." * * * * The said Riley without the
knowledge or consent of the plaintiff and against his interest,
has acquired a personal interest to himself, the said Riley in
the land in controversy; that while said Sandford has treated
said paper as a mortgage he the said Riley ever since the
date thereof has declared the same to be an absolute deed."
* * * * "Plaintiff has, through friends willing to aid
him, placed himself in a situation ready to pay off and dis-
charge said debt to Sandford with interest."

The amended bill also charges it to be fraudulent in said
Riley, when he had a bid of $3,200.00 to take for Sandford
a deed for the land for $2,400.00. It also claims, that the
transaction was usurious in this, that to make out the $2,400.00
stated in this deed to be the consideration, it would be nec-
essary to include as a part of the costs, $76.00, the commis-
sion of the trustee, to no part of which was he entitled, the
land not having been sold under the deed of trust, and to this
extent the transaction was usurious. The amended bill also
alleges "that not satisfied with the suit before the justice
mentioned in the original bill the said Riley, as attorney for
Sandford, served a declaration in ejectment on the plaintiff,
demanding the said land, in the United States district court at
Clarksburg; that the plaintiff was put to the pain, trouble
and expense of going to that court, over one hundred miles
distant, to learn that said Riley, after putting him to all that
trouble and expense, had declined to docket the case."

The prayer of this amended bill is as follows :

"The plaintiff therefore prays that the defendants named
in the caption be made defendants to this amended bill and
required to answer the same on oath, and that the said paper
filed as Exhibit 'A' with the bill may be held, adjudged and
decreed to be a mortgage, and that the plaintiff may be

allowed to pay so much as he may be found justly to owe the said Sandford, and that the said usurious and unlawful interest shall be abated, and that said equity of redemption and the said legal title outstanding in the said Riley may be decreed to be reconveyed to the plaintiff; that this amendment may be allowed to be filed and to be made part of said original bill; and grant unto the plaintiff such other, further and general relief as the court may see fit to grant in the premises. And as in duty bound will ever pray." The amended bill was sworn to.

The defendants filed answers also sworn to, the contents of which it is not deemed necessary to state. They set out the facts of the case, as we have stated them above, more fully than they were set out in the answer to the original bill and set them out substantially correct though not as full as they have been hereinabove stated. They also denied all the statements in the amended bill not admitted in the statement set out in the answers. Numerous depositions were taken in some respects contradictory. But the admissions in the pleadings and exhibits filed with the bill, amended bill and answers proved the facts we have hereinbefore stated. And though the record occupies ninety-four pages, there was nothing else proven, which is regarded as material except that the ejectment suit named in the amended bill was brought but not docketed. It was proven that in the sum of $2,400.00 above mentioned the deed of August 17, 1883, was included about $47.00, the commission of the trustee, Riley. There is no proof that Matheney sowed wheat on this farm in the fall of 1883 or planted a crop of corn in the spring of 1884. All that is proven in reference to these matters is found in Matheney's deposition to the effect that "he has cultivated the land since he made the deed to Sandford." To what extent or how he does not state. His son in his deposition states, "he planted some potatoes on this farm in April 1884. Sandford he says saw him planting these potatoes, and his father Wm. H. Matheney was also present. He says he told Sandford he thought he would plant a considerable lot of potatoes if his father was not ousted. And he says Sandford said. He hoped his father would be able to save his land; all he wanted was his money." Sandford in his deposition says:

" I had several long talks with Matheney about the matter and he never at any time said or intimated that John H. Riley or any other person had made him any promises that he should have any time in which to redeem the land, or that the deed which he had made should be treated as a mortgage; but he freqdently said he had no claim in the land, but that it was all in his Sandford's hands.   Prior to August 17, 1883, I had said to John H. Riley trustee, that I was willing to bid the amount of my debt and the costs on the land, but did not authorize him to waive the sale, give any time, or accept any mortgage.   I was willing to accept the land for the debt but on no other terms..   I accepted the deed of August 17, 1883, in discharge of his debt for the consideration stated therein.   Up to August 17, 1883, I had not considered John H. Riley as my agent or attorney to transact my business for me.   About the first of February, 1884, I employed said Riley to take steps to obtain possession of said lands, learning that said Matheney was committing waste, cutting and selling timber.   I directed an action to be brought for the possession thereof.   I did not at any time treat the deed of August 17, 1883, made to me as a mortgage or at the time so regard it. I did not at any time agree with said Matheney that he should have three months or any other time in which to redeem said land.   Matheney never has complied with any proposition I made to him in reference to this land."

These statements of Sandford are supported by the other evidence and are believed to be true.   From these and from the statement of the son of Matheney above given it would appear that when he was planting the potatoes he knew that Sandford had ordered proceedings to be instituted to oust Matheney from the possession of this land.   It seems in the highest degree improbable that, after he had ordered these proceedings to be instituted, he stated anything to the son of the defendant and in the presence of his father, from which any just inference could be drawn, that Matheney was entitled to the possession of the land.   No cultivation of this land after August 17, 1883, by Matheney or by any one under him is proven except the planting of some potatoes made after he knew a proceeding was about to be instituted by Sandford to get possession of the land.   The statement in

this amended bill, that the "Plaintiff has through friends willing to aid him placed himself in a situation ready to pay off and discharge the said debt to Sandford with interest," is proven to be utterly false. The only persons, who have been willing to advance him any money at any time since August 17, 1883, were A. B. Burke & Co., who were shortly after August 17, 1883, willing to advance him or for his use about enough money to pay off one third of his indebtedness to Sandford, provided he would comply with certain very hard terms, which we have stated, and which he could not comply with. No other friends (if they could be called friends) ever offered him any assistance; and he never had the means of paying off this debt to Sandford and never did pay one cent upon it.

These being substantially all the facts proven in this case, the circuit court of Jackson on March 10, 1885 made the following final decree:

" This cause came on again this day to be finally heard upon the plaintiff's original and amended bills, and the answers thereto, respectively, by the defendants, with plaintiff's general replications to the same, upon the depositions duly taken and filed in the cause by both plaintiff and defendants, and the papers filed with said depositions as exhibits, and upon all the exhibits filed as part of the pleadings herein, upon the former orders and proceedings heretofore made and had in this cause, and was argued by counsel for plaintiff and defendants. Upon mature consideration of all which, the court is of opinion, from an inspection of the pleadings and proofs in the cause, that the charge of fraud made by the plaintiff in his bill and amended bill against the said Riley, trustee, touching the alleged sale and transfer of the land in the bill and proceedings mentioned and described, is not sustained, and that in that respect the plaintiff has not shown himself entitled to any relief; and that the paper writing, Ex. " A," with the bill, was not nor should the same be treated as a mortgage; but the court is further of opinion, from a careful examination of the record in this cause, that at the time the alleged sale and transfer of the said land from plaintiff to the defendant Sandford was made, the said Riley sustained such a fiduciary relation to the said plaintiff and to the subject-matter of said

alleged sale and transfer, that he could not legally become
the purchaser, or act in the purchase of said property in the
manner set out in the said record for his co-defendant; and the
court is further of opinion that said alleged sale and transfer,
being of the nature and character aforesaid, the same may be
avoided at the instance of the plaintiff, and he, the said plain-
tiff, so desiring it, the court doth adjudge, order and decree
that the paper-writing, bearing date of August 17, 1883, pur-
porting on its face to be a deed from the plaintiff, W. H.
Matheney and Druzilla Matheney, his wife, to the defendant,
John P. Sandford, an attested copy of which is filed with the
bill as exhibit " A," be and the same is hereby set aside and
annulled and held for naught as if the same had never been
executed; and the court doth further ascertain that the said
paper-writing operates to pass no title from the said plaintiff
to the said defendant Sandford, or to any other person; and
the court doth further ascertain that the motion heretofore
made by the defendants to dissolve the injunction awarded in
this cause ought to be overruled and disallowed at this time,
and doth so adjudge, order and decree; and it seeming to the
court that the defendant Sandford ought not to proceed fur-
ther in his action of unlawful entry and detainer against the
said Matheney for the recovery of the possession of the land
in controversy in this suit, it is further adjudged, ordered and
decreed that the said John P. Sandford be and he is hereby
perpetually enjoined from any further proceedings in the said
action of unlawful entry and detainer as prayed for in plain-
tiff's bill. It is further adjudged, ordered and decreed that
the plaintiff do recover from the defendant Sandford his costs
by him about the prosecution of his said suit in this behalf
expended, including a statutory allowance of $20.00 to the
plaintiff, and in default of his paying the same within thirty
days from the rising of this court, then a common law execu-
tion may issue therefor at the plaintiff's election; but nothing
herein contained shall be taken or construed as in any man-
ner affecting the rights and interests, either legal or equitable,
of the parties to this suit, or any of them, under and by virtue
of the deed of trust mentioned in the pleadings in this cause,
executed by the plaintiff and his wife to John H. Riley, trustee,
bearing date of August 11, 1881, an attested copy of which

is filed as exhibit " B " with the plaintiff's bill, but the defendant Sandford is left at liberty to enforce said deed of trust in such manner as he may be best advised; and there being nothing further to be done in this cause, the same is dismissed and stricken from the docket."

From this decree John P. Sandford has obtained an appeal.

*J. H. Riley* for appellant.

*C. L. Brown* for appellee.

GREEN, JUDGE :

The first question arising on the record is : Was the deed of August 17, 1883, executed by Wm. H. Matheney and wife to John P. Sandford conveying a tract of land in Jackson county, West Virginia in consideration of a debt due from the grantor to the grantee, amounting principle, interest and costs to about $2,400.00 though absolute on its face really and in fact a mortagage to secure this debt? This Court has decided that "if the proof offered to establish, that a deed absolute on its face was intended to secure a loan of money and was therefore a mortgage, consists only of the parol declarations of the parties, such proof in order to prevail must be clear and strong, if it be unaided by proof of the situation and circumstances of the parties, and their conduct prior to, at the time of or after the execution of the deed. The following circumstances and facts have great weight in leading a court to the conclusion, that a deed absolute on its face is merely a mortgage : First, that the grantor was hard pressed for money, and that the grantee was a known money-lender; second, that the actual execution of the deed was procured by a negotiation for a loan of money by the grantee to the grantor; third, that the parties did not apparently consider or contemplate the quantity or value of the land; fourth, that the price professedly given for the land on the face of the deed was grossly inadequate; fifth, that the possession of the land has remained with the grantor, whether rent be nominally reserved or not; and if no rent is even professedly reserved this last circumstance is entitled to great weight." See *Vandergilder* v. *Hoffman*, 22 W. Va. 2, syl. point 7; *Davis, Committee* v. *Deming*, 12 W. Va. 281;

*Dubois et al* v. *Lawrence et al*, 16 W. Va. 443 ; *Klinck* v. *Price*, 4 W. Va. 4.

It was also decided in *Vandergilder* v. *Hoffman*, that "if upon the parol evidence it is doubtful, whether the conveyance should be regarded by a court of equity as an absolute deed or a mortgage to secure a lien, the courts incline to hold it to be a mortgage."    If in the case before us we look to the parol evidence, "it is not doubtful whether this conveyance was intended by the parties as an absolute deed or mortgage." The evidence distinctly shows, that, when this deed was delivered, it was clearly understood by the grantor, that it was to be regarded as an absolute deed and not as a mortgage, and it was distinctly understood, that this deed would not be received, unless it was delivered and to be regarded by the parties as an absolute deed.    It is true, that if the court could see from the circumstances surrounding the parties, when the deed was executed, that the real transaction was a loan of money by the grantee to the grantor or an agreement on his part to postpone the enforcement of his debt, it it should be secured by a lien on the grantor's land, then despite the form of the deed and despite the fact, that witnesses were called to prove that it was delivered as an absolute deed and not as a mortgage, it would nevertheless be declared a mortgage by the courts.    For, if the circumstances show, that the transaction is such, as is above described, it would establish an equity in the grantor superior not only to the terms of the deed but to the distinct understanding ; for it being shown by these circumstances that the transaction was really a mortgage, it is against the policy of the law to allow such mortgage to be irredeemable, though it be ever so distinctly understood by the parties that it should be irredeemable ; just as it is against the policy of the law to allow the creation of inalienable estates ; and such estates can not therefore be created by any terms however clearly expressed in the deed, and though the parol proof be ever so distinct at the time the deed was delivered, that this was the express purpose and understanding of the parties.    This is a necessary conclusion from what is said in *Vandergilder* v. *Hoffman*, 22 W. Va. 16 ; and by Field, judge, in *Pierce* v. *Robinson*, 13 Cal. 116.

But the circumstances surrounding the parties, when this deed of August 17, 1883 was made, show beyond all controversy or dispute, that the real transaction was not and could not have been a loan and was not and could not have been an agreement or understanding express or implied on the part of the grantee, that he would postpone the enforcement of the debt, if the grantor would secure it by a lien on his land. There is no pretence, that any money was loaned by Sandford to Matheney in August, 1883, or that there was at that time any application or negotiation between the parties in reference to any loan. Nor had there been any proposition for such loan or any such loan made by these parties for more than two years before this deed of August 17, 1883, was executed. The first and second circumstances named in the seventh point of the syllabus in *Vandergilder* v. *Hoffman* do not exist in this case. It is absolutely immaterial whether Sandford was or was not a known money-lender, as the actual execution of this deed was not preceeded by any negotiations for a loan by the grantee to the grantor. No such negotiation had taken place between the parties for more than two years. It is equally obvious from the circumstances admitted as surrounding the parties, when this deed was executed, that the real transaction was not and could not possibly have been an agreement or understanding express or implied that Sandford would postpone the enforcement of his debt, which Matheney had owed him for a year without the payment of a cent of principal or interest, provided Matheney would give him a lien on his land. The admitted fact was, that, when the debt was incurred, about two years before the date of this deed, Matheney had secured this debt, the only one he owed Sandford, by giving him a lien on this identical tract of land. He had given this lien in the form most desirable, a form in which the land could be sold and the proceeds applied to the payment of the debt without applying to any court and upon the mere request of Sandford. Matheney's wife had united in this lien, so as to convey her right of dower. The form in which this lien was given, a deed of trust, was far preferable, so far as Sandford was concerned, to a mortgage or any other form of lien; for any other form of lien would have required Sandford to institute a suit in equity before he could

subject the land to the payment of his debt; while under his deed of trust he could at any time require the trustee to sell after advertising the tract of land for sale. And on August 17, 1883, when this deed was made, this advertisement had been made, and Sandford could have had this tract of land without any delay sold and the proceeds applied to the payment of his debt, or he could, if he had chosen, have had the sale postponed. Under these circumstances it seems impossible to conceive, that there could have been an understanding, expressed or implied, that Sandford would postpone the enforcement of his debt, if Matheney would give him a mortgage on this tract of land. Of what possible use could the mortgage be to Sandford? Why should he desire to substitute a form of security on this tract of land, which he could only enforce by a suit in equity, for a form of security, which he already had, which he could enforce at any time at his pleasure, which he could have enforced, if he chose, that very day. It would be almost impossible to induce one by any parol proof to believe, that Sandford could have done an act so entirely senseless. The parol proof of those who witnessed the delivery of the deed, is clear and emphatic, that he did not do the foolish thing of taking a mortgage in lieu of a deed of trust covering the same property, which he could have enforced at any time, even on that day. But such proof was under the circumstances entirely unnecessary. The court could not under these circumstances consider a deed absolute on its face as a mortgage.

Under such circumstances the fact, that the grantor in this deed was hard pressed for money, or that the grantee had permitted the possession of the land to remain with the grantor, whether rent was reserved for the land or not, would be utterly insignificant. In this particular case the fact, that he remained in possession of the land, is accounted for by the fact, that some two weeks after this deed was executed to Sandford, he gave to Matheney an option to purchase this land within ninety days. When he did not then surrender the land, within less than three months he employed a lawyer to institute proceedings to oust him. How utterly vain is it under the circumstances to attempt to prove, that Sandford ever regarded this deed as a mortgage. There can not be a

doubt, that neither he nor Matheney ever so regarded it. This deed beyond controversy was not only intended and regarded by both parties always as an absolute deed and not as a mortgage, but the transaction, out of which it arose, demonstrates that it really was not a mortgage in fact,. which the parties were endeavoring to conceal by putting the deed in the form of an absolute deed.

The circuit court was therefore clearly right, when in its decree of March 10, 1885, it declared, that this deed from Matheney and wife to Sandford was not a mortgage. But it seems to me the circuit court erred, when it expressed the opinion "from a careful examination of the record in this cause, that at the time when the alleged sale and transfer of the land from the plaintiff to defendant Sandford was made, said Riley sustained such a fiduciary relation to the said plaintiff, and to the subject-matter of said alleged sale and transfer, that he could not legally become the purchaser, or act in the purchase of said property in the manner set out in the said record for his co-defendant, and that this sale and transfer may therefore be avoided at the instance of the plaintiff." The decree on these grounds at the request of the plaintiff set aside and annulled this deed, and the injunction awarded against Sandford for thus proceeding on the common law side of the court to recover possession in this court was perpetuated, and the costs of this suit were decreed against said Sandford. I can see no just grounds for these conclusions or for these portions of said decree. It assumes justly, that Sandford, though he had a deed of trust on this land, had a perfect right to purchase it of Matheney, but that in making this purchase Riley, the trustee, could not legally act as his agent. Is this sound law, or has the court below taken a correct view of the facts?

The counsel for the appellant insists to use his own language that: "There is a stubborn rule of equity founded upon the most solid reasoning and supported by public policy, that a trustee can not become a purchaser of the trust-estate. He can not be at once vendor and vendee. He can not represent in himself two opposite and conflicting interests. As vendor he must desire to sell as high, and as purchaser to buy as low, as possible; and the law has wisely

prohibited any person from assuming such dangerous and incompatable characters." A large number of authorities are cited to sustain this position. And to the cases, which counsel cites, I would add *Newcombs et al.* v. *Brooks et al.* 16 W. Va. 32, syl. points 1 and 2. In this case the Court went still further and held:

"First.—A person who occupies any fiduciary relation to another, is bound not to exercise it for his own benefit and to the prejudice of the party, to whom he stands in such relation, any of the powers or rights or any knowledge or advantage of any description, which he derives from such confidential relation."

"Second.—A purchase by a fiduciary, while actually holding a fiduciary relation of the trust property either of himself, or of the party to whom he holds such fiduciary relation, is voidable at the option of the party to whom he stands in such relation, although the fiduciary may have given an adequate price for the property and gained no advantage whatever."

It is true the amended bill charged "that the said Riley without the knowledge and consent of the plaintiff and against his interest has acquired a personal interest to himself the said Riley in the land in controversy." But this allegation is denied and there is not in the record one particle of evidence to sustain it. Had it been true, that the trustee, Riley, had acquired any interest in the land conveyed by Matheney to Sandford, August 17, 1885, by this conveyance, and especially if he had had a secret interest in this purchase unknown to the grantor, Matheney, as is intimated by this charge in the bill, then there could be no doubt, but that on the authority of *Newcombs et al.* v. *Brooks et al.* this deed could properly be set aside by the court below at the option of Matheney the grantor. But as he had no interest whatever in the purchase of the land, and as in the sale and conveyance of August 17, 1885, he was neither vendor nor vendee, neither the law as laid down by the counsel above quoted nor the law as laid down in *Newcombs et al.* v. *Brooks et al.* is applicable to the case before us.

But it is insisted by the counsel of the appellant, that, where a person because of his being a trustee cannot purchase

the estate himself even from his *cestui que trust*, he can not buy it as the agent of any other person ; and to sustain this position he refers to *Michael* v. *Good*, 4 How. 503 ; *Ex parte Bennet*, 10 Ves. 381 ; *Coles* v. *Trecothich*, 9 Ves. 325 ; 3 Waite's Actions and Defences 467 ; *North Baltimore Building Association* v. *Calwell*, 25 Md. 420 ; *Beeson* v. *Beeson*, 9 Bens. Stat. (Barr) 279 ; *Terwilliger* v. *Brown*, 39 Barb. 1 ; Same 44 N. Y. 237. I have examined these authorities, so far as they are accessible to me. And while some of them do not properly bear on the subject, and I can not say, that it would be proper to deduce this doctrine from them, yet certainly some of them give strong countenance to this doctrine; and very strong reasons may be given in support of it. I am not, with the opportunities I now have, willing to lay down this rule so broadly, or to say that there should be no exceptions to it ; but I do not find it necessary to determine definitely the law with reference to this subject, because in my judgment the question does not arise in this case. I may for argument's sake admit, that no trustee, who has authority conferred on him to sell property, can properly buy such property for himself, nor can he while such trustee acting as the agent of any other person purchase this trust-property of the *cestui que trust* or person who appointed him trustee to sell such property. If this be law, it is inapplicable to the facts proven in this case. Sandford had conferred on Riley no authority whatever in reference to the purchase of this land excepting the simple authority to set it up at the public sale to be made by Riley at a sum sufficient to pay his debt, interest and the costs of executing the trust, which sum would have been about $2,400.00. Riley accordingly set the land up at that price some time prior to August 17, 1883 ; and the public sale at the solicitation of Matheney, the debtor, was continued from time to time till August 16, 1883, at which time there was bid for said tract of land by a responsible bidder $3,000.00. The power therefore conferred on Riley to act as agent for Sandford (if it is properly to be regarded as a power to act as agent) had ceased to have any existence prior to August 16, 1883, having ceased to have any existence after a bid had been made at the public sale of a larger amount than $2,400.00, Sandford's bid. So that on August 17, when the

deed the subject of controversy was executed, Riley, the trustee, was not the agent of Sandford to purchase this land at the public sale or otherwise.    There is no pretence that he ever had any authority from Sandford to purchase this land for him of Matheney.    When therefore he drew the deed on August 16, 1883, from Matheney and wife conveying this land in consideration of this debt, interest and costs amounting to about $2,400.00 to Sandford, he was acting solely as the agent of Matheney and at his request.    Sandford not having till some days afterwards any knowledge that such purchase was contemplated, when this deed was executed by Matheney and wife and handed to Riley the trustee the next day, he was not the agent of Sandford to accept this deed, Sandford never having authorized him to accept this or any other deed from Mtaheney, and not in fact knowing that Mathency contemplated making such deed.    Of course this deed was totally inoperative, till it was assented to by Sandford several days afterwards.    Riley the trustee with the approval of Matheney but without the knowledge of Sandford, who was not there, when this deed was handed to Riley by Matheney, withdrew the property from sale publicly believing that Sandford would be satisfied with this deed.    His only reason for so thinking was the fact that Sandford had authorized him to set up this land at his bid of $2,400.00. From that he concluded that Sandford would be willing to take a deed from Matheney conveying the land to him for this amount to be applied in satisfaction of his debt. It seems in this he was right, as when this transaction was made known to Sandford a few days afterwards, he assented to it.    He seems to have preferred to take the land at that price rather than to get only about one third of his debt and wait for the balance for one and two years, which would have been the result, if he had declined to accept this deed.    On this state of facts there is no propriety in saying, that this land was purchased of Matheney by Riley, the trustee, acting as agent for Sandford ; and therefore the rule of law, which as a matter of public policy according to the views of. the attorney for the appellant forbids a trustee to act as agent for any one in purchasing the trust-property of the *cestui que trust*, has no application to the facts in this case.

A number of matters have been argued by the counsel for the appellee and many authorities cited which seem to me to be entirely foreign to this cause. For instance, it is contended, that the statute-law of Ohio, which shows that there was no usury in the promissory note executed by Matheney to Sandford and secured by the deed of trust on his tract was not properly proven—and many authorities were cited to sustain that position. In this State the court takes judicial notice of the statutory and of other laws of all other States or countries by express statutory-law. (Sec. 4 of ch. 13 of Code.) Of course it was entirely unnecessary to prove in this cause the law of Ohio whether statutory or otherwise. The courts in this State know the Ohio law without any proof.

The deed of August 17, 1883 recites the consideration therefor as "a debt due from the parties of the first part to the party of the second part, amounting principal, interest and costs to about $2,400.00." It is insisted that excluding all commissions to the trustee it only amounted to $2,345.35. This is claimed to have been a great wrong inflicted on the plaintiff Matheney by Riley the trustee. Now the consideration of this deed was "the debt, interest and costs due from Matheney to Sandford" and not $2,400.00; and Matheney suffered no wrong, if the supposed amount of this debt, interest and costs as stated in the deed was erroneous. The acceptance of this deed by Sandford was a satisfaction in full of this debt, interest and costs, and this is all it would have been if the supposed amount, which should have been stated, was, as plaintiff's counsel claimed, $2,345.35.

It is claimed too, that Riley, trustee, violated his duty as trustee grossly in accepting this deed from Matheney in consideration of $2,400.00, when at that very time he was offered at the public sale $3,200.00 for the land from a responsible party. But in fact Riley, the trustee, did not in a legal point of view accept this deed. His receiving it from the hands of Matheney, as we have seen, did not make it operative. All he really did on August 17, 1885, which had any legal effect, was simply withdrawing the land from public sale, which was done at the request and with the approval of Matheney.

It is argued at much length by the appellee's counsel, that

Riley, the trustee, was bound to act in his character of trustee with entire impartiality between Sandford and Matheney, to both ot whom he held a trust-relation, and this being the case he was bound to act as the agent of both parties in such a way, as would promote the interest of both, and not be prejudicial to the rights of either. A very large number of authorities are cited to support this position and among them the *Anchor Stove Works* v. *James Gray et al.,* 9 W. Va. 469. But all this is not only foreign to this cause, but if it had been the enquiry directly involved in the cause, the evidence shows that the trustee, Riley, has not violated his duty by acting in a partial manner nor abused his position as trustee by regarding solely the interest of Sandford and utterly disregarding the rights and interest of Matheney. The fact that he received from the hands of Matheney this deed ot August 17, 1883, conveying his land to Sandford for $2,400.00, when he knew he could get for it at least $3,200 is relied on as showing this undue partiality. But this he did not do in his capacity of trustee and did it only on the solicitation of Matheney, who after mature consideration concluded, that his interest would be thereby promoted. Riley was unwilling to do this and before doing it represented to Matheney, that he might loose several hundred dollars by doing it. But Matheney believing that Sandford did not want this farm in West Virginia, which was in a very poor condition, and which he could not well keep or cultivate, as he lived in Ohio, and could not probably sell in any reasonable time because it was of so unsaleable a character, concluded that if he could raise money in a short time, as he believed he could, Sandford would sell this farm to him at a small advance on what he paid for it, and he would thus be able to put himself in a better condition in a few months than he would be, if he permitted the farm to be sold at a low price to some other person in Jackson county, West Virginia, who would not resell it to him. Doubtless in making this conclusion he was influenced by the belief, that Sandford in re-selling the farm to him, would do so on liberal terms, as in his conduct toward him, Sanford had acted with great liberality theretofore. After once ordering this land to be sold by his trustee, in the spring of 1883, Sandford at his request had recalled the order,

and after having waited nearly a year without the payment of even the interest due or any part of it, and having a second time ordered the sale of the property by the trustee, Sandford had approved of the repeated postponements of the sale by the trustee for Matheney's accommodation. Under these circumstances Matheney believed, that if he could raise the money to re-purchase this land in a short time, as he thought he could, Sandford would sell it to him at a small advance above what he proposed to sell it to Sandford for. In these conclusions Matheney was only mistaken in his ability to raise money to re-purchase this farm in a short time. He was not mistaken in supposing, that Sandford would re-sell to him at a small advance; for on September 1, 1883, only two weeks after Sandford purchased the land he gave to Matheney the refusal of re-purchasing it at a small advance of from $100.00 to $300.00 according to the length of time which this right to take this land was extended to Matheney.

It is further said by the counsel for the appellee that Riley was guilty of a breach of trust in bringing on a sale of the land when it could not be sold to advantage. But Riley had as trustee no discretion as to the time, when he should offer the land for sale; for Matheney by his deed of trust had declared it to be his duty to sell this tract, if he failed to pay this debt when due, whenever he was required to do so by Sandford, and Riley was required so to do before he advertised the land for sale. His only discretion was, that, if at the sale he could not obtain any reasonable price for the land, and there was any probability of getting any better price for it, he might postpone the sale to another time. In the exercise of this discretion Riley did postpone the sale to a future day several times, and by so doing the price offered for the land was raised from $2,400.00 to $3,200.00. In all this I can see no disposition on the part of the trustee to disregard the rights and interest of Matheney or to act with partiality.

Again it is complained, that in this suit as well as in the action of unlawful detainer and in the ejectment suit Riley has acted as counsel for Sandford. And one of the frivolous objections to the answer of Sandford by the plaintiff below was that Riley had no right to act as such counsel for Sandford. What possible objection could there be to his so

doing. He never acted as counsel for Sandford in these cases or indeed in any business transaction whatever, while he was such trustee; for after August 17, 1883, when the trust-subject was sold, of course Riley ceased to be a trustee. In fact before August 17, 1883 Riley had acted in other matters as counsel for Matheney but never as counsel for Sandford. Many authorities are cited to show, that a trustee can not properly act as counsel for one of the *cestui que trust* against the other. But they are entirely irrelevant in this case. So far as the record discloses, Riley has acted fairly and impartially as trustee.

The last objection urged is, that the deed of August 17, 1883, ought to be set aside for gross inadequacy of price. We have seen, that in this case there is no evidence tending to impeach the fairness of this sale, the vendor was perfectly well acquainted with the farm he sold having lived on it for years. The vendee on the other hand lived in another State and was in all probability unacquainted with the farm personally, and all the information he had about it was derived from the statements of others in all likelihood. The vendee gave for the land a larger price than he would have been willing to give for it except for the fact, that by buying this farm he hoped to settle a debt, the collection of which annoyed him. He was doubtless willing, at the time he purchased it, to have resold it at least to the vendor for the price he gave for it, for within two weeks after he purchased it, he offered it to him at an advance of only $100.00, if he would pay for it within thirty days. The land was probably worth intrinsically between $4,000.00 and $5,000.00; but it was in a very bad condition, and in addition to that there was then a general depression in the price of lands in Jacksen county as shown by the evidence. So that it would have been probably very difficult if not impossible then to have found a purchaser for this land in any reasonable time at a price exceeding $3,500.00. A strenuous effort had been made to sell it just before, and the highest price offered for it was $3,200.00. Under these circumstances this sale ought not to be set aside for gross inadequacy of price. This Court decided in *Burford et al.* v. *McConnihay*, 15 W. Va. 433, syll. point 3, that "there being no evidence tending to impeach the fairness

of a sale it can not be set aside for inadequacy of price, unless it be so inadequate as to justify the presumption of fraud, and to justify such presumption from inadequacy alone, it must be so strong and manifest an inadequacy as to shock the conscience and confound the judgment of a man of common sense. Half the estimated value of such property is not such an inadequacy."

There is another position taken by appellee's counsel which I deem proper to notice, though in my judgment it is entirely foreign to this cause. It is insisted, that as the legal title to this land was in the trustee, Riley, on August 17, 1883, the deed by Matheney to Sandford executed that day could convey only his equity of redemption, and that therefore Sandford on such a title could sustain neither an action of ejectment nor a writ of unlawful detainer; and very many authorities are cited to sustain this position. It strikes me that counsel have omitted to bear in mind in this argument, that the effect of the acceptance by Sandford of this deed of Matheney to him was to extinguish his debt against Matheney, which was the only debt secured by the deed of trust which invested Riley with the legal title to this land. But I decline to examine the authorities cited on this subject by the counsel for the appellee or to consider whether what I have just above named would effect this question, as it seems to me, that the question is obviously entirely foreign to this cause. If it be true, that Sandford can in a court of common law for this reason sustain neither an action of ejectment nor a writ of unlawful detainer against Matheney to obtain possession of this tract of land, instead of being a reason for sustaining a decree perpetually enjoining such a suit in the common law court, it would be a strong reason why a court of equity should not grant or perpetuate such an injunction. For if the plaintiff has a complete and perfect defence to this action of unlawful detainer at common law, as is here contended, he would have no right for that cause only to come into a court of equity asking such injunction; for if the appellee's counsel be right in this position, he has no need of equitable relief having a perfect common law defence.

My conclusion therefore is, that the decree of the circuit court of Jackson of March 10, 1885, must be set aside, re-

versed and annulled; and the appellant must recover of the appellee, Wm. H. Matheney, his costs in this Court expended; and this Court rendering such decree, as the circuit court ought to have rendered, must dissolve the injunction granted and dismiss the bill and amended bills of the plaintiff, Wm. H. Matheney, in the circuit court of Jackson and decree, that the defendants below, John P. Sandford and John H. Riley, recover of William H. Matheney their costs severally expended in the circuit court of Jackson.

REVERSED. DISMISSED.